## Arthur Young & Company
v.
## Kelly
*[Cite as 4 AOA 430]*

*Case No. 89AP-711*
*Franklin County, (10th)*
*Decided June 28, 1990*

*Carlile, Patchen, Murphy & Allison, Mr. Alan F. Berliner and Mr. Jay F. McKirahan and Mr. Scott Univer, for Appellee.*

*Bradley & Farris Co., L.P.A., Mr. Philip R. Bradley and Mr. Robert H. Stoffers, for Appellant.*

REILLY, P.J.

This is an appeal from a judgment of the Franklin County Court of Common Pleas finding defendant, David Kelly, in contempt for violating a preliminary injunction. The merits of the preliminary injunction were previously reviewed by this court in *Arthur Young & Company* v. *Kelly* (Apr. 28, 1988), No. 87AP-800, unreported (1988 Opinions 1531).

Plaintiff is a large national accounting firm. Defendant was employed as an accountant at plaintiff's Columbus office. Defendant joined the firm in 1984 and eventually was promoted to principal status within the firm. On May 21, 1987, the firm informed defendant this his employment was going to  be terminated in several weeks. About two weeks later, defendant approached the firm to seek a release from a restrictive employment covenant that he had signed while at the firm. The covenant reads:

"You agree that you will not * * * for a period of two years after the termination of this agreement, directly or indirectly solicit or provide, without the consent of the firm, any professional services such as those provided by the firm for anyone who was a client of the  firm anytime during the 12 months prior to your leaving the firm and for whom you provided any service an employee of the firm during the prior five years. * * *"

However, plaintiff did not release defendant, but instead filed suit in the common pleas court on July 17, 1987. Plaintiff's amended complaint sought injunctive relief, an accounting, and damages for defendant's alleged breaches. Specifically, plaintiff alleged that defendant breached the restrictive covenant, that he breached his fiduciary duty not to compete with the firm and that he unfairly competed with the firm.

After issuance of this preliminary injunction, defendant appealed to this court and sought a stay of the injunction. His initial application for a stay was refused because defendant had not first applied to the trial court for a stay. This court granted defendant's second application for a stay on October 27, 1987 after he was denied a stay by the trial court.

Pending appeal of the preliminary injunction, on November 6, 1987, plaintiff filed a motion for defendant to show cause why he should not be held in contempt of court for alleged violations of the preliminary injunction.

On April 28, 1988, this court ruled on the appeal of the preliminary injunction. In our decision, we modified the preliminary injunction and reversed the judgment of the trial court in part. This court found that plaintiff had failed to show irreparable harm at the preliminary injunction hearing as to the clients then retained by defendant because those clients had submitted affidavits stating that they no longer wanted services from plaintiff and would seek services from another firm if they were prohibited from retaining defendant. *Arthur Young & Co., supra,* at 1536. We noted that defendant admitted soliciting some clients from plaintiff, but we said that injunctive relief was inappropriate as to those clients because plaintiff had an adequate remedy at law in the form of damages, if any, that it could prove as a result of those breaches. After stating that the principal purpose of the preliminary injunction should have been to maintain the status quo pending determination of the underlying action, we wrote:

"Although there is no evidence of irreparable harm from past breaches in the record on appeal, the trial court properly granted the preliminary injunction in order to prevent any future solicitation, given the fact that appellant admitted to soliciting Arthur Young clients in contravention of the restrictive covenant. The purpose of the preliminary injunction, unique to the facts presented by this case, should be to maintain the status quo as of July 17, 1987, the date the complaint was filed, and guard against the potential for ·any possible future solicitation causing irreparable harm to appellee. * * *" *Id.* at 1537.

On remand, the trial court changed the wording of the injunction by inserting that the purpose of its injunction was to maintain the status quo.

After this, on July 1, 1988, the trial court conducted proceedings on the contempt motion. At the close of the hearing, the court indicated that it would hold an evidentiary hearing on the contempt motion. Thereafter, the court filed an entry indicating that plaintiff's affidavits established a *prima facie* showing that defendant should appear to show cause why he should not be found in contempt.

The evidentiary hearing on the contempt motion was held on July 22, 1988. However, instead of deciding the matter at the close of the hearing, the trial judge took the matter under advisement. But, before the court could act, the trial judge was defeated in the judicial election. The case was transferred to a successor judge.

Eventually, the successor judge ruled on the matter, over defendant's objection. The court reviewed the transcripts of the contempt hearing and post-hearing memoranda and found defendant in contempt for violations of the original preliminary injunction and of the preliminary injunction as modified.

The journal entry and order finding defendant in contempt, states, at paragraph 6 of the Conclusions of Law, that: "[d]efendant violated the Court's Orders by performing services for at least Hallet, Masheter, Webster and Priest." Pursuant to R.C. 2727.12, the trial court fined defendant $200, and further ordered defendant to pay plaintiff's legal fees incurred for prosecution of the motion. Further, the court ordered defendant to account for all fees billed or paid in connection with plaintiff's former clients that defendant performed services for on or after July 17, 1987. Finally, the court ordered defendant to post a $25,000 bond to "* * * secure the damages assessed under rulings 4 and 5(B) and (C) in the Decision of May 1, 1989." (Journal Entry, page 6.) The bond thus secured the attorney fees and damages for prosecuting the contempt and attorney fees awarded as discovery sanctions on a previous ruling. Whereupon, defendant appealed to this court.

Defendant advances the following assignments of error:

"I. The present trial court (Judge Stratton) erred as a matter of law and abused her discretion by finding Defendant-Appellant, David Kelly, in contempt of court, in that: (a) Judge Stratton did not preside over the contempt hearing; (b) Judge Stratton issued her decision based upon the transcript of the contempt hearing; (c) Mr. Kelly specifically objected to Judge Stratton's review of the transcript of the contempt hearing, in lieu of presiding over the hearing.

"II. The former trial court (Judge Letts) erred as a matter of law and abused his discretion by requiring Mr. Kelly to prove he was not in contempt of court, thus requiring Mr. Kelly to bear the burdens of proof and going forward at the July 22, 1988 contempt hearing.

"III. The present trial court (Judge Stratton) erred as a matter of law and abused her discretion by finding Mr. Kelly in contempt of court.

"IV. The present trial court (Judge Stratton) erred as a matter of law and abused her discretion in assessing contempt of court damages which were measured by 'all fees billed and/or paid by any clients formerly with plaintiff for whom defendant performed services on or subsequent to

July 17, 1987, until a date within thirty (30) days from this order;' and Judge Stratton further erred as a matter of law and abused her discretion by requiring Mr. Kelly to post 'an additional bond of $25,000 to secure the damages.'"

Before addressing defendant's four assignments of error, it is necessary to note some important principles of the law of contempt which bear upon the analysis herein.

The Supreme Court, in *Windham Bank* v. *Tomaszczyk* (1971), 27 Ohio St. 2d 55, paragraph one of the syllabus, wrote:

"Contempt of court is defined as disobedience of an order of court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions."

It is long established that "* * * [t]he power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions * * *." *Denovchek* v. *Bd. of Trumbull Cty. Commrs.* (1988), 36 Ohio St. 3d 14, 15; *State* v. *Local Union 5750* (1961), 172 Ohio St. 75; *Hale* v. *State* (1896), 55 Ohio St. 210. Hence, the power to punish for contempt is said "* * * to exist independently from express constitutional provision or legislative enactment. * * *" *Cincinnati* v. *Cincinnati District Council 51* (1973), 35 Ohio St. 2d 197, 202. Although the Supreme Court of Ohio had repeatedly intimated that it is "* * * highly doubtful that the General Assembly may properly limit the power off a court to punish for contempt * * *," *Cincinnati, supra,* at 207, the General Assembly at least may prescribe procedure in indirect contempt cases.

"Proceedings in contempt are *sui generis* in the law. They bear some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these. Contempt proceedings are means through which the courts enforce their lawful order. * * *" *Cincinnati, supra,* at 201-202. See J.Fox, The history of Contempt of Court (1972); Beal, Contempt of Court, Civil and Criminal (1908), 21 Harv. L. Rev. 161.

In accordance with these principles, it is particularly noteworthy that in contempt, "* * * great reliance should be placed upon the discretion of the trial judge. * * *" *Denovchek, supra,* at 16.

In the first assignment of error, defendant contends that it was an abused of discretion for the trial court to find him in contempt when the successor judge did not hear the evidence at the contempt hearing, but instead based the decision on a consideration of the contempt hearing transcript. Specifically, defendant maintains that the

trial court abused its discretion under Civ. R. 63(B), which provides:

"If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned or findings of fact and conclusions of law are filed, another judge * * * may perform those duties; but if such other judge is satisfied that he cannot perform such duties, he may in his discretion grant a new trial."

Construing this provision in the context of a bench trial involving a breach of contract claim, the Summit County Court of Appeals held that a successor judge could not render judgment if the judge's predecessor had not filed findings of fact and conclusions of law. *Welsh* v. *Brown-Graves Lumber Co.* (1978), 58 Ohio App. 2d 49. In *Welsh*, before the predecessor judge who tried the case could render a decision, he became ill and died After a review of the record, his successor held for plaintiff. The *Welsh* court wrote:

"The clear implication of part (B) [of Civ. R. 63] is, that when the trial judge acts in the capacity of the trier-of-fact, a successor judge cannot take over the case if the predecessor judge has not filed findings of fact and conclusions of law. This prohibition is clearest in a case such as this, where the predecessor judge has not rendered a judgment." See Civ. R. 52. *Id.* at 51.

After discussing prior Ohio case law supporting this view, the *Welsh* court qualified the rule, noting that in the "rarely encountered" situation where witness credibility was not a factor before the trier-of-fact, it would not be an abuse of discretion for a successor judge to render judgment. *Id.* In such a situation, it is not troublesome that the successor judge did not observed the witnesses. See, also, Annotation, Power of Successor or Substituted Judge, in Civil Case, to Render Decision or Enter Judgment on Testimony Heard by Predecessor (1968), 22 A.L.R. 3d 922; *State* v. *McKinley* (1982), 7 Ohio App. 3d 255 (applying the analogous Crim. R. 25).

Plaintiff argues that *Welsh* should not control in the present case for two reasons. One reason is that the Civ. R. 63 does not apply to contempt proceedings. Another reason is that credibility issues were not involved because defendant admitted numerous violations of the preliminary injunction.

Although the Court of Appeals for a Hancock County has said that "[c]ontempt proceedings are prescribed by special statutes and, consequently, are excepted from the operation of the Rules of Civil Procedure * * *," *Courtney* v. *Courtney* (1984), 16 Ohio App. 3d 329, paragraph three of the syllabus, we are compelled to conclude that the principle of *Welsh* applies to the present proceeding. When credibility is involved, a fair hearing requires the trier-of-fact to observe the testimony.

Nevertheless, plaintiff argues that even if Civ. R. 63 applies to contempt, it applies only when a verdict is returned or findings of fact and conclusions of law are filed. Notwithstanding dicta in unreported cases cited by plaintiff, clearly the *Welsh* court held that by implication, Civ. R. 63 prohibits judgment-on-the-transcript in the even more troublesome situation where the predecessor judge has given no indication of his evaluation of the testimony.

Plaintiff's contention that credibility issues were not involved at the contempt hearing raises a more complex problem. To address this, it is necessary to note some aspects of contempt. This inquiry necessarily must include some discussion relating to defendant's third assignment of error, which disputes the finding of violation of the order.

In order to show a contempt, it is necessary to establish a valid court order, knowledge of the order, and violation of it. In civil contempt, intent to violate the order need not be proved. *Windham Bank, supra,* paragraph three off the syllabus; *Pugh* v. *Pugh* (1984), 15 Ohio St. 3d 136, paragraph one of the syllabus.

In this case, the trial court found defendant in contempt for violation of the initial preliminary injunction and the preliminary injunction as modified, "at least for Hallet, Masheter, Webster and Priest."

Although defendant argued to the trial court that he could not be held in contempt for violation of the initial erroneous order, he has not argued this on appeal and therefore this court will not address the issue except to note the general rule that, unless it is void, an order must be obeyed until it is set aside by orderly and proper proceedings. *State, ex rel. Beil* v. *Dota* (1958), 168 Ohio St. 315; *Cloverleaf Restaurants, Inc.* v. *Lenihan* (1974), 80 Ohio App. 477. But see *Davidson* v. *Abele* (1965). 2 Ohio App. 2d 106. Cf. *Johnson* v. *Preston, Dir. of Highways* (1967), 12 Ohio St. 2d 100 (involving a subsequent change of law). See generally, Annotation, Reversal, modification, dismissal, dissolution, or resettlement of injunction order of judgment as affecting prior disobedience as contempt (1944), 148 A.L.R. 1024, Section III.

Considering both injunctions, the initial order prohibited defendant from the above-mentioned prohibited activities as of August 11, 1987 while the order as modified prohibited further solicita-

tion or acceptance of work, Thus, under the modified order, defendant could perform work for plaintiff's former clients if they became defendant's clients on or before July 17, 1987, the filing date of the underlying action. The issue here is not whether defendant violated the restrictive employment agreement used confidential information, induced clients to be retained by him, or unfairly competed with plaintiff. That question is to be determined by the underlying action. The inquiry here is whether he engaged in prohibited activities after August 11, or if he engaged in prohibited activities in relation to prohibited clients who were not his as of July 17. Of course defendant could not have violated the initial injunction during the stay's operation.

Hence, the question becomes whether defendant violated the injunction with respect to Hallet, Masheter, Webster, and Priest as a matter of law. For the principle of *Welsh* would preclude rendering judgment if violations only could be established through judging credibility on the basis of the transcript.

First we do not accept plaintiff's contention that no credibility issues were involved since defendant was the only person to testify on many of the issues. Defendant's own testimony was extensively cross-examined. In the present case, defendant's guilt depends on how his testimony is construed.

For instance, as to Sonia Hallet, defendant testified that she gave her tax documents to him prior to the initial injunction. To find that he violated the initial injunction for using confidential information, the court would have to doubt defendant and think that he took those documents from plaintiff. As for the injunction as modified, the court would have to doubt defendant that Hallet was always his client, even while working for plaintiff. For there was testimony that Hallet was defendant's client as of July 17, 1987, the date on which the complaint was filed. Our modification of the injunction would have allowed him to finish the work already commenced.

As to fee bills submitted into evidence for Hallet's 1987 returns, defendant testified that he did the work prior to August 11, 1987, when the initial injunction came into effect, but that he signed her return on August 13, 1987. There was conflicting testimony on the legal significance of signing the return. The trial court could not just choose plaintiff's expert over defendant's testimony. The determination could only stand if this question involves a legal question as opposed to a factual one.

Concerning Masheter Ford, defendant testified that he had dealt with Masheter while working for plaintiff. He further testified that Masheter became his client prior to the filing of the complaint. Although he stated that he did corporate tax work for Masheter after leaving plaintiff based on work papers he obtained from plaintiff, on redirect examination his counsel introduced evidence that defendant had obtained those papers at a deposition, not by taking them from plaintiff.

Therefore, to find that defendant violated the initial injunction, it is first necessary to infer that defendant dealt with Masheter by providing accounting services. It is also necessary to disbelieve defendant about those papers and infer that he took them from plaintiff.

Defendant admitted providing some services during the time in which the initial injunction was in effect. These services constituted five percent of the total work of completing the corporate returns. Although this work was a small percentage of the total, it would be proper to find him in contempt of the initial injunction based on this admission. A party subject to a preliminary injunction must comply with the letter and spirit of the injunction. Doing something which would tend to obstruct the court is the definition of contempt. In this regard, courts have been strict. See, *e.g., Windham, supra,* at 59.

However, it would be error on these facts to find defendant in violation of the injunction as modified. He testified that Masheter was his client before the filing of the complaint. To find him guilty of violating this order, it is necessary to reject this testimony. Moreover, defendant also testified that some work was done for Masheter in 1988. But, there is no evidence that this constituted acceptance of further work within the meaning of the injunction as modified.

With respect to Webster, defendant testified that, while with plaintiff's firm, he may well have done some work for NGB Enterprises, in which Webster owned stock. Defendant admitted attending a shareholder's meeting of NGB during the injunction period but stated that he performed no accounting service there. However, he billed NGB Enterprises for the services.

On these facts, credibility issues arise again. There was no evidence that Webster was a former client of plaintiff. Defendant testified that he may have done work for NGB, which was a client for plaintiff in Indiana. Hence, defendant's "may" must be construed as "did" to find that NGB Enterprises was a prohibited client - one which was a client for plaintiff and that defendant per-

formed work for while at the firm. Further, though it is not credible that defendant did not perform accounting services at the shareholder's meeting, especially because he billed NGB, there really was no evidence on what he did there.

Finally, concerning Sandy Priest, there was no evidence of contempt presented regarding her. The only mention of her name was in connection with the Stephen Land Company. Apparently, Sandy and Linda Priest were accountants who prepared a tax return for this company under defendant's supervision while he was a supervisory accountant with plaintiff. This testimony was introduced by plaintiff to rebut defendant's assertion that he could not comply with the court's initial order with respect to Hallet because if he did another accountant would have had to start from scratch. The testimony regarding the Stephen Land Company, indicates that defendant reviewed Linda Priest's work without starting from scratch.

Nevertheless, this testimony reveals nothing about Sandy or Linda Priest. In its brief, plaintiff contends that Sandy Priest was its client. But there is no evidence of this in the record.

In addition to the credibility issues outlined above, the predecessor trial judge, throughout the contempt hearing, indicated that he was going to give certain "weight" to some evidence. Defendant stresses that these indications compound the problems associated with judgment-on-the-transcript. For the successor judge could possibly assign different weight to the testimony at a later time even though the successor did not hear the testimony. However, those statements by the predecessor judge largely relate to evidentiary rulings. They do not involve credibility issues. They involve legal questions.

Finally, it is noted that the trial court assessed a monetary award in this case. Such a remedy, as discussed in the fourth assignment of error, would bear a relation to the extent of the violations and the probability that defendant would comply with the order. The probability of future compliance could be determined in part from observance of the demeanor of the alleged contemnor.

For the foregoing reasons, this court finds that credibility issues were involved at the contempt proceeding. The trial court erred in adjudging defendant in contempt on the basis of the transcript.

Defendant's first assignment of error is well-taken.

In the third assignment of error, defendant contends that the trial court abused its discretion in finding defendant in contempt of court. Specifically, defendant argues that no violations were proven beyond a reasonable doubt.

Because contempt is quasi-criminal, a presumption of innocence prevails. *Loney* v. *Hall* (1917), 8 Ohio App. 154. Nonetheless, "* * * [a] finding of civil contempt may be made upon clear and convincing evidence." *ConTex, Inc.* v. *Consolidated Technologies, Inc.* (1988), 40 Ohio App. 3d 94, syllabus. Manifestly, a finding of criminal contempt requires proof of guilt beyond a reasonable doubt. In this context, "* * * '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' * * *" *ConTex, supra,* at 97 (citing *C.E. Morris Co.* v. *Foley Constr. Co.* [1978], 54 Ohio St. 2d 279).

In this case, the trial court did not specifically state what burden of proof it applied. At any rate, we have considered to a certain extent the lack of proof of violations of the initial and modified preliminary injunctions and the determination of the first assignment of error is dispositive of this appeal. Nonetheless, for the purposes of passing on this assignment of error, there was some competent, credible evidence to support the finding that defendant violated the initial injunction by signing Hallet's return and by doing the five percent of work for Masheter while the initial injunction was in effect.

In any event, reversal and remand is warranted because the *some evidence* rule presumes that the trial court determined the evidence and made credibility determinations. See *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80. Moreover, such error is prejudicial because it would affect the court's determination of the proper remedy.

Defendant's third assignment of error is well-taken.

In the second assignment of error, defendant argues that the trial court abused its discretion by placing the burden of proof on defendant. Further, defendant contends that because a definite fine was imposed, this was a criminal proceeding. Thus, defendant maintains that it was error to place the burden of proof on the accused.

"* * * '[I]ndirect' contempt [is] a contemptuous act outside the presence of the court, * * *." *ConTex, supra,* at 96. R.C. 2705.02 provides that a party can be punished for disobedience of a lawful order of a court. Further, an alleged indirect contemnor is entitled to notice and an opportunity for a hearing. R.C. 2705.03. See Dobbs, Con-

tempt of Court:"A Survey (1971), 56 Cornell L. Rev. 181, 221-30."

R.C. 2727.12 provides that "* * * [u]pon being satisfied, by affidavit, of the breach of an injunction or restraining order, the court or judge who issued such injunction or order may issue an attachment against the guilty party * * *." This section is not exclusive but rather is cumulative with the provisions for the hearing of indirect contempts in R.C. Chapter 2705. *Fawick Airflex Co.,Inc.* v. *United Electrical Radio & Machine Workers of America, Local 735* (1950), 87 Ohio App. 371, 376; *Cincinnati, supra.* Thus, "R.C. 2705.03 sets forth the procedure which must be followed in indirect contempt proceedings. * * *" *Cincinnati, supra,* at 203. That section provides, in pertinent part, that "* * * a charge in writing shall be filed with the clerk of the court. * * *" Further, R.C. 2705.05(A), as amended, provides:

"In all contempt proceedings, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. * * *"

In this case, plaintiff filed a motion for defendant to show cause why he should not be held in contempt of court. To support the motion, plaintiff attached some fee bills and the deposition of Robert L. Masheter. Defendant has not argued that these materials should not have been considered by the court. Further, defendant did not submit any opposing evidence.

After review of the evidence presented, the initial trial judge issued a show cause order requiring defendant to appear and show cause why defendant was not in contempt. The successor judge expressly stated that after this first determination, the burden was on defendant to show why he was not in contempt.

Under the statutes mentioned above, a private party can initiate contempt proceedings by filing a motion to show cause with the requisite evidentiary support. The judge at this stage of the proceeding has been compared to a grand jury or prosecutor. Kuhns, Limiting the Criminal Contempt Power (1975), 73 Mich. L. Rev. 483. It is reiterated that contempt is *sui generis* in the law. Essentially, the judge must be satisfied from the evidence that a breach occurred. This procedure places the burden on the party filing the motion not only to come forth with probative evidence of a breach, but also to prove the breach to the satisfaction of the court. If a court is satisfied that a breach may have occurred, then the burden shifts to the defendant to appear and show that he did

not breach the court's order, or that he should not be held in contempt.

The burden of proof cannot shift to the defendant if the proceeding is criminal in nature. See, *Mullaney* v. *Wilbur* (1975), 421 U.S. 684. Nevertheless, an alleged contemnor bears the burden of going forward and the burden of proof with respect to affirmative defenses such as inability to comply with the order. Placing the burden of proving an affirmative defense on a defendant in a criminal proceeding does not violate due process. *Martin* v. *Ohio* (1986), 480 U.S. 228. Furthermore, placing the burden of proof on a defendant in civil contempt proceedings has been sanctioned. See *United States* v. *Rylander* (1983), 460 U.S. 752, 757; *Maggio* v. *Zeitz* (1948), 333 U.S. 56, 75-76.

To assess whether it was error to shift the burden to defendant in this case, it first must be determined whether the proceeding was civil or criminal in nature. Necessarily, a "* * * reviewing court is not bound by the trial court's characterization * * *" of its decree. *ConTex, supra,* at 95. Rather, the reviewing court "* * * must independently ascertain its nature. * * *" *Id.* at 95.

Although *post hoc* attempts to classify contempts have been criticized by courts and commentators alike, *Cincinnati, supra,* at 202; Martineau, Contempt of Court: Eliminating the Confusion Between Civil and Criminal Contempt (1981), 50 U. Cin. L. Rev. 677, 681, some principles are more or less clear. "The distinction between civil and criminal contempt is based on the character and purpose of the contempt sanctions. * * *" *Denovchek, supra,* at 16 (citing *Brown* v. *Executive 200, Inc.* [1980], 64 Ohio St. 2d 250]. "* * * If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil. * * *" *Id.* at 16. Civil contempt "* * * is remedial or coercive and for the benefit of the complainant * * *." *Brown, supra,* at 253. Criminal contempt, on the other hand, is designed to vindicate the authority of the court. "* * * Criminal contempt * * * is usually characterized by an unconditional prison sentence. * * *" *Id.* at 253-254.

In *Hicks* v. *Feiock* (1988), 108 S.Ct. 1423, the United States Supreme Court clarified the law on classification of contempt for the purpose of the Due Process Clause. The court specifically rejected an approach based on scrutinizing the underlying purpose of a court sanction. Such an approach would not only force federal courts to psychoanalyze state courts, but also it would provide little clarity in the area. Instead, the court focused on the "* * * substance of the proceeding and the

character of the relief that the proceeding will afford. * * *" *Id.* at 1429. The court then noted a "few straightforward rules" regarding the character of the relief, stating that "* * * [i]f the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order. * * *" *Id.* at 1429-1430.

In the present case, the substance of the proceeding was manifestly civil in nature. It was instituted by a party to a civil action without involvement by prosecutorial authorities. Further, most of the relief sought was civil in nature.

The trial court awarded damages payable to plaintiff, a fine of $200 payable to Franklin County, and a bond to secure the damages. The trial court's order did not provide for purging.

The damages and bond were remedial in nature because they were requested by plaintiff, payable to plaintiff and designed to coerce compliance with the preliminary injunction for the benefit of plaintiff. The unconditional fine, however, was criminal in nature because it was for a fixed amount that was payable to the county and not the plaintiff. Hence, this fine must be set aside.

Contrary to defendant's contention, even though the $200 fine is deemed criminal, the mere fact that a criminal fine was imposed does not render the entire proceeding criminal in nature. "* * * It is well settled that '* * * conduct can amount to both civil and criminal contempt,' * * * and that both aspects may be dealt with in the same proceeding. * * *" *Cincinnati, supra,* at 206. See, also, *Brown, supra,* at 254-255.

Again, the disposition of the first assignment of error mandates reversal and remand. For the purpose of passing on this assignment of error, the monetary award and bond imposed were civil in nature. Hence, there was no error in placing the burden on defendant. However, the fine was criminal in nature and must be set aside.

Defendant's second assignment of error is well-taken in part and not well-taken in part.

In the fourth assignment of error, defendant asserts that the trial court erred in awarding an excessive amount of damages and bond. Defendant contends that the award is excessive because it does not reflect the stay or modification.[1]

The trial court awarded damages for all fees billed or paid by any former client of plaintiff from July 17, 1987 until thirty days from the court's order. Moreover, the court awarded to plaintiff costs of prosecuting the order, including its attorney fees. Further, the court required defendant to post a $25,000 bond to secure those damages and attorney fees that were awarded as a discovery sanction.

R.C. 2727.12 provides that a party who breached an injunction "* * * shall pay a fine of not more than two hundred dollars, for the use of the county, make immediate restitution to the party injured, and give further security to obey the injunction or restraining order. * * *" In the context of permanent injunctions, the restitution language has been read to sanction a compensatory contempt award. *Cincinnati, supra,* at 207-208; *Brown, supra,* at 254. In *Cincinnati,* the court rejected a narrow reading of the word restitution and instead held that it included damages for losses sustained during and as a consequence of the breach. *Cincinnati, supra,* at 208. See Rendelman, Compensatory Contempt: Plaintiff's Remedy When a Defendant Violates an Injunction (1980), 1980 U. Ill. L. F. 971.

Assuredly, the authority of the trial court to award the type of monetary damages it did cannot be questioned. They are expressly sanctioned by statute. Even the award of attorney fees has been sanctioned by Ohio law. *ConTex, supra,* at 95, note 1; *State, ex rel. Fraternal Order of Police,* v. *Dayton* (1977), 49 Ohio St. 2d 219, syllabus.

As indicated above, we have held that since the trial court based its decision on the transcript and since it erred in doing so, reversal and remand is necessary. However, for the purpose of passing on this assignment of error, it is reiterated that contempt sanctions are largely a matter of discretion. In a criminal contempt case, it has been said that the sanction must be "reasonably commensurate with the gravity of the offense." *State* v. *Kilbane* (1980), 61 Ohio St. 2d 201.

While compensatory damages have been awarded in the context of permanent injunctions to compensate plaintiff for losses sustained as a result of the breach, the context of a preliminary injunction changes the analysis to a certain degree. As this court reaffirmed in *Arthur Young & Co.* v. *Kelly, supra,* the purpose of a preliminary injunction is to preserve the status quo. An award should be designed to coerce the contemnor into complying with the decree pending the litigation. It should be tailored to that end. Coercion can be accomplished by a restitutionary award, as the statute expressly provides. *Valco Cincinnati, Inc.* v. *N&D Machinery Service, Inc.* (Dec. 31, 1985), Hamilton App. No. C-84-0835, unreported. Howev-

er, the court should not essentially decide the underlying litigation in a contempt action.

Yet, the fact that the trial court did not specifically tailor the monetary award based on the dates of the stay or in light of the modification is of no consequence. The remedy was reasonably tailored to accomplish compliance with the decree, given the state of the record. Hence, it cannot be concluded that the trial court erred in this regard except as we stated in the discussions of the first and third assignments of error.

However, the trial court's use of the $25,000 bond in the context of this case was error.

R.C. 2727.12 provides that the party breaching the injunction can be required to "* * * give further security *to obey the junction or restraining order. * * * *"* (Emphasis added.) This additional remedy is designed to secure future compliance with the injunction. *Fawick, supra.*

In this case, the trial judge expressly stated that bond was being set pursuant to R.C. 2727.12. Further, the trial court said that the bond was to secure the damages, already assessed, arising from the contempt and from the previous discovery abuse sanction.

This was inappropriate. The statute's reference to "security" relates to an undertaking which would secure future compliance or obeyance with the court's order for the benefit of the non-breaching party. The statute should not be read to provide security for *payment* of damages already adjudicated. In this case, that is what the statute was used to do.

Because this was incorrect and would increase the entire bond, we need not reach the question of whether the $25,000 amount was excessive. Further, we need not consider the question of whether security was necessary. In any event, the bond must be set aside.

Defendant's fourth assignment of error is well-taken in part.

For the foregoing reasons, defendant's second and fourth assignments of error are sustained in part and overruled in part. Defendant's first and third assignments of error are sustained. The judgment of the trial court is reversed and the cause is remanded for further proceeding consistent with this opinion and in accordance with law.

*Judgment reversed and*
*cause remanded.*

BRYANT, J., concurs.
PEPPLE, J., dissents in part and concurs in judgment.

PEPPLE, J., of the Auglaize County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

PEPPLE, J., dissenting in part; concurring in judgment.

I disagree with only one aspect of the foregoing opinion.

Concerning the fourth assignment of error, I would hold that since a trial court has the authority to award monetary damages and attorney fees as one means to coerce the contemnor into complying with the decree pending litigation, the trial court, *in addition* to the statutory authority of R.C. 2727.12, has the inherent authority to order the collection or security for payment of such a restitutionary award.

Absent such authority, the majority's conclusions that "[c]oercion can be accomplished by a restitutionary award" which is "reasonably tailored to accomplish compliance with the decree" would become an empty threat. The trial court must be given wide discretion in exercising its authority to enforce such a remedial award, including requiring payment or security for payment, or other collection methods.

If the purpose of the remedial award at the time of preliminary injunction is coercion, where is the coercive pressure if the trial court has no authority to immediately enforce the award or provide for its eventual enforcement through requiring security for payment? I believe the trial court acted within its inherent authority, beyond the statutory authority, in requiring the bond.

Accordingly, I would have overruled the fourth assignment of error.

I concur in the judgment and in the remaining portions of the opinion.

---

[1] The record does not disclose exactly how much the award is. Moreover, plaintiff adduced no evidence of actual losses, *i.e.,* that the solicited clients would have remained its clients and plaintiff lost money because of this. Indeed, defendant testified that only one client, and not a prohibited one on the evidence presented, returned to plaintiff. However, defendant has not argued herein that it was necessary for plaintiff to prove actual loss. See *Cincinnati, supra,* at 208.