OPINION
{¶ 1} Plaintiff-appellant Vicki Miller appeals from a judgment entered on a jury *Page 2 
verdict awarding her $1,354 as reimbursement for medical bills, but failing to award her any damages for pain and suffering. Miller contends that the verdict is against the manifest weight of the evidence. She further contends that the trial court abused its discretion by denying her motion for a new trial.
 {¶ 2} We conclude that the jury's decision is supported by competent credible evidence and that the trial court did not abuse its discretion by relying on that evidence to deny the motion for a new trial. Consequently, the judgment of the trial court is Affirmed.
 I {¶ 3} On April 29, 2004, Miller was involved in an automobile accident when the vehicle she was operating was rear-ended by a vehicle operated by defendant-appellee Catherine Remusat. At the time of the accident, Miller's vehicle was stopped at a red light behind several vehicles. Miller's husband and daughter were also in the car. The evidence establishes that Remusat's car was traveling at or below ten miles per hours when she collided with Miller.
 {¶ 4} According to Miller, she immediately felt pain and tightness in her neck, which caused a headache. However, she refused transport to the hospital by emergency personnel. Thereafter, Miller's husband drove the family home, where Miller took aspirin for the pain.
 {¶ 5} Approximately one-half hour later, Miller went to the Emergency Room at Upper Valley Medical Center, and informed the staff that she was having neck and jaw *Page 3 
pain with a headache. Following a physical examination, Miller was diagnosed as having a "strain cervical spine" and was sent home with Motrin, Vicodin and Flexeril.
 {¶ 6} The next day, Miller returned to the emergency room with complaints of "some headaches" and "more soreness" of the neck. Another physical examination was performed, and x-rays were obtained. The x-rays showed no fracture or dislocation. Miller was given a soft cervical collar and instructed to continue with her medications.
 {¶ 7} Four days after the accident, Miller began treatment with a chiropractor because she was having pain in her throat, neck and shoulders and was still having headaches. Miller treated with the chiropractor on ten different days through May 21, but she discontinued treatment because she did not improve.
 {¶ 8} According to Miller, she had received a telephone solicitation from another chiropractor, Jack Adrian, and began treatment with him on May 25. Miller continued treatment with Adrian until July 7, 2004. Adrian referred Miller to a massage therapist whom she treated with for approximately one month.
 {¶ 9} Thereafter, in September 2004, Miller consulted with a third chiropractor regarding lower-back pain. However, she did not see the chiropractor after her initial consultation.
 {¶ 10} Miller filed suit against Remusat in May of 2005. As part of her suit, she sought damages for pain and suffering and permanency. The matter was tried to a jury in May of 2007.
 {¶ 11} Of relevance hereto, Miller testified the accident caused her to have *Page 4 
debilitating pain in her neck, jaw, head and shoulder. She further testified that, at the time of the trial, she was still experiencing constant headaches and neck pain.
 {¶ 12} Miller presented the testimony of Adrian, who testified that he began treating Miller on May 25, 2004, at which time Miller complained of "severe neck pain and what she referred to as continuous incapacitating headaches." According to Adrian, Miller denied having a problem with prior headaches. At some point during the course of his treatment, Adrian ordered x-rays of the neck, which he testified "revealed a reversal of what is known as the normal lordotic curve of the neck." Adrian testified that this evidenced a muscular injury to the cervical spine. Adrian also ordered an MRI of Miller's cervical spine. The MRI, which was performed on June 25, 2004, was negative. Adrian testified that as a result of the accident, Miller suffered "a hyperextension-flexion * * * whiplash injury of her neck * * * with resulting migraine headaches." Adrian further testified that Miller's injury was permanent.
 {¶ 13} Remusat presented the testimony of Joseph Paley, M.D., an orthopedic surgeon who conducted an independent medical examination of Miller at the request of Remusat. According to Dr. Paley, there were no objective findings, on physical examination or x-ray, to support Miller's complaints. He testified that he reviewed the x-rays from the emergency room as well as an MRI ordered by Adrian. Dr. Paley testified that the films reflected no basis for Adrian's assertion that Miller had straightening of the lordotic curve. Dr. Paley explained that a straightening of the lordotic curve indicates the presence of muscle spasm. He further testified that had Miller had spasms, it would have caused a curvature loss that would have shown up on the original emergency room x-rays *Page 5 
as well as the MRI. Dr. Paley stated that Miller "probably sustained a mild muscle
ligament strain of her cervical spine." Dr. Paley did testify that he found the visits to the emergency room, and the treatment provided there, to be appropriate. However, he testified that any treatment received from chiropractors was inappropriate because any manipulation of the neck, which both chiropractors performed, would serve only to aggravate any strain. Finally, Dr. Paley noted that this type of strain should resolve itself within two to three weeks, and that it was not a permanent injury.
 {¶ 14} At the close of evidence, the trial court directed a verdict in favor of Miller with regard to $1,354 in medical bills incurred during her two trips to the emergency room. Based upon that directed verdict, the trial court gave the following instruction to the jury: "It has also been admitted by [Remusat] that [Miller] suffered a very mild sprain/strain of her cervical spine."
 {¶ 15} The jury awarded Miller the sum of $1,354, but rejected all other damage claims. Miller's attorney objected to the verdict, but the trial court discharged the jury, and ultimately entered judgment on the verdict. Miller filed a motion for a new trial pursuant to Civ. R. 59(A)(6) and (9). The motion was denied. From the judgment and from the denial of her motion for a new trial, Miller appeals.
 II {¶ 16} We begin with Miller's Second Assignment of Error, which states as follows:
 {¶ 17} "THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 6 
 {¶ 18} Miller contends that the jury verdict omitting damages for pain and suffering is not supported by the evidence. In support, she argues that there was "uncontroverted evidence proving that [she] suffered a traumatic injury [and that Remusat] admitted that [Miller] had suffered a traumatic injury." She also notes that the trial court directed the verdict with regard to her emergency room bills based upon its finding that she was injured. Thus, she argues that the jury's verdict cannot be reconciled with the evidence, and that it must be reversed.
 {¶ 19} When reviewing a claim that a judgment is not supported by the evidence, this court presumes that the judgment of the lower court is correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. "[Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 20} The undisputed evidence in this case reveals that Remusat was negligent, and that as a result of that negligence Miller suffered a strain to her neck. The evidence also shows that she incurred $1,354 in bills for treatment at the emergency room for that strain, and that this treatment was appropriate. The issue then is whether the jury erred by concluding that Miller had no pain and suffering associated with that strain of her neck.
 {¶ 21} As noted in Part III, below, the trial court in its decision denying Miller's request for a new trial stated that there were issues regarding the credibility of Miller's expert, chiropractor Jack Adrian. Specifically, Adrian testified that Remusat's car was *Page 7 
traveling at twenty-two miles per hour when it collided with Miller's car. However, the evidence did not support this assertion, and Adrian was unable to state his basis for this claim. Further, Adrian denied that he initially contacted Miller for treatment, but Miller testified to the contrary, thereby, as the trial court noted, begging the question of which witness was being truthful. Additionally, Adrian testified that, based upon his review of x-rays that he ordered performed, Miller had a straightening of her lordotic curve. However, Adrian failed to release copies of those x-rays for review. As noted above, Dr. Paley testified that any straightening of the lordotic curve would have been apparent on the initial emergency room x-rays, as well as on the MRI. In other words, according to Dr. Paley, such a loss of curvature would not have presented on Adrian's x-rays, if it had not shown on prior x-rays or on the subsequent MRI.
 {¶ 22} Furthermore, there was a credibility issue with regard to Miller. A review of the record shows that Miller was evasive about the fact that she had a history of headaches. During her testimony, Miller was questioned extensively about these past headaches, and it was revealed that during her prior deposition, Miller had denied that she had been previously treated for headaches. And the record shows that Miller did not inform the personnel during her post-accident visits to the emergency room that she had suffered from past headaches. She also denied prior headaches when she began to treat with Adrian.
 {¶ 23} The jury was provided with medical records indicating that Miller had been treated for these prior headaches. In 2000, Miller went to the emergency room at Upper Valley Medical Center with complaints of headache, nausea and vomiting. She told the *Page 8 
medical staff at that time that she had "a history of migraine when she was younger and also during her last pregnancy." The record shows that at that time in 2000, Miller was given an injection and medications for pain, and was discharged with a diagnosis of acute headache. Miller presented to the emergency room again the following day with a complaint of severe headache and some neck and scalp pain. At that time, she informed personnel that she "had headaches as a child." A CAT Scan was performed, and was normal. Miller was diagnosed with "musculoskeletal tension type headache," and she was discharged.
 {¶ 24} As a reviewing court, we must "accord due deference to the credibility determination of the fact-finder." Hunter v. Hunter, Montgomery App. No. 21285, 2006-Ohio-6307, ¶ 9. "This court has held many times that credibility is for the trier of fact." Id. "As noted by the Ohio Supreme Court in Myers v. Garson (1993), 63 Ohio St.3d 610, 614
`where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court'." Id.
 {¶ 25} The record contains competing medical evidence. The jury was presented with Adrian's testimony that Miller suffered a whiplash injury to her neck with resulting headaches, and that the injury was permanent. However, the jury also had evidence, in the form of Dr. Paley's testimony, that she suffered, at most, a very mild strain of her neck; a strain requiring no treatment other than rest, and which should have resolved in a couple of weeks. Dr. Paley further testified that there were no objective findings to support Miller's claims regarding her symptoms. The jury could have reasonably chosen *Page 9 
to credit Dr. Paley's more conservative diagnosis over Adrian's.
 {¶ 26} Further, when the medical testimony is coupled with the fact that Miller had suffered headaches, and even neck pain, for which she had actively sought treatment in the past, the jury could have reasonably found that any neck or headache pain she experienced was not causally related to the subject accident, but was pain having its onset well before the motor vehicle accident.
 {¶ 27} We conclude that there was evidence upon which a reasonable juror could conclude that the headaches and neck pain that Miller claimed were caused by the subject motor vehicle accident were pre-existing and not causally related to that accident. Therefore, we conclude that a reasonable juror could find that Miller suffered no compensable pain and suffering related to this accident.
 {¶ 28} The Second Assignment of Error is overruled.
 III {¶ 29} Miller's First Assignment of Error is as follows:
 {¶ 30} "THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR A NEW TRIAL."
 {¶ 31} Miller contends that the trial court should have granted her motion for a new trial. In support, Miller argues that the jury rendered an inconsistent verdict by failing to award damages for pain and suffering when it was established, as a matter of law, that she suffered a traumatic injury.
 {¶ 32} Pursuant to Civ. R. 59(A)(6) and (9), a new trial may be granted if the *Page 10 
judgment is not sustained by the weight of the evidence or when an error at law occurred during trial and was brought to the attention of the trial court. The decision of the trial court whether to grant or deny a motion for a new trial will not be reversed absent an abuse of discretion. Pryor v. Tooson, Clark App. No. 2002-CA-91, 2003-Ohio-2402. An abuse of discretion means that the trial court's decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St. 3d 217, 219.
 {¶ 33} As noted in Part II, above, we conclude that the jury's decision is supported by the weight of the evidence. Therefore, insofar as the motion for new trial was based upon a manifest-weight-of-the-evidence argument, it was correctly denied.
 {¶ 34} We next turn to the claim that a new trial is mandated by Civ. R. 59(A)(9) because of the allegedly inconsistent verdict. In this case, Miller argues that because the trial court found as a matter of law that she suffered an injury and because she incurred medical bills as a result of treating at the emergency room, the jury was required to award her damages for pain and suffering. She argues that the failure to award pain and suffering rendered the verdict inconsistent. We disagree.
 {¶ 35} As stated above, while there was testimony of a neck strain, there was reasonable evidence upon which the jury could find that the complained of symptoms of headache and neck pain were not caused by that strain. Therefore, we cannot say that the jury went astray by failing to award pain and suffering.
 {¶ 36} Further, the mere fact that the trial court directed the verdict with regard to the emergency room bills does not render the verdict inconsistent. As the trial court noted, it is not unreasonable for a person involved in a car accident to be transported to *Page 11 
the emergency room as a precaution. In its decision denying the request for a new trial, the trial court stated that it "never found [Miller] suffered pain, nor was the jury instructed that the emergency room visits were because of pain [Miller] suffered from the accident." Instead, the jury was instructed that the "emergency room visits were appropriate (meaning it was fair for [Remusat] to pay for [Miller] to be checked out)." The trial court further noted that the issue of whether Miller actually suffered pain was a question left to the jury. The trial court noted that people may be transported to an emergency room following an accident as a precaution. The trial court rejected Miller's contention that anyone who goes to an emergency room must be injured and thus that damages must be awarded for pain and suffering. Instead, the trial court noted that the issue of pain and suffering was a matter for the jury which found no basis for Miller's claim of pain and suffering.
 {¶ 37} We cannot say that the trial court abused its discretion by denying the motion for new trial. Accordingly, the First Assignment of Error is overruled.
 IV {¶ 38} Both of Miller's assignments of error having been overruled, the judgment of the trial court is Affirmed.
GRADY and DONOVAN, JJ., concur.
 Copies mailed to: *Page 12 
Gary D. Plunkett
Brett R. Bissonnette
William A. Dickhaut
Amy L. Metcalfe
Paul B. Roderer
 Hon. Robert J. Lindeman *Page 1