[Cite as *In re H.Y.*, 2014-Ohio-2674.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

IN RE: H.Y.                    :

                                :

                                :      Appellate Case No.    26082

                                :

                                :      Trial Court Case No.   2012-1234

                                :

                                :

                                :      (Appeal from Common Pleas Court -

                                :      Juvenile Division)

                                :

. . . . . . . . . .

O P I N I O N

Rendered on the 20th day of June, 2014.

. . . . . . . . . .

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 130 West Second Street, Suite 840, Dayton, Ohio 45402
      Attorney for Appellant

CHRISTOPHER B. EPLEY, Atty. Reg. No. 0070981, 100 East Third Street, Suite 400, Dayton, Ohio 45402
      Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Brittany R. appeals from a judgment awarding legal custody of her minor daughter, H.Y., to the natural father, Aaron Y. Brittany contends that the trial court erred in denying her motion for a new trial after the magistrate who conducted the trial was removed from the bench. In addition, Brittany contends that she should continue as sole custodian because she has been the primary care-giver for H.Y. since the child's birth. Finally, Brittany contends that the trial court's decision is arbitrary, unreasonable, and unconscionable.

**{¶ 2}** We conclude that the trial court did not abuse its discretion in overruling the motion for new trial. Civ.R. 63(B), relied on by Brittany, does not apply to magistrates, and the trial court properly conducted an independent review of the record, as is required by Juv.R. 40(D)(4)(d). The court also did not abuse its discretion in awarding custody of H.Y. to Aaron. R.C. 3109.042 provides only a statutory designation of legal and residential custody to unmarried females. However, when a court makes an initial custody decision, the parents stand on equal footing. Furthermore, Brittany was not the primary caretaker, as she has alleged; both parents spent equal amounts of time caring for the child. Brittany also had some mental health issues that the court was entitled to consider.

**{¶ 3}** Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 4}** The minor child, H.Y., was born in Montana on December 20, 2007. At that time, her parents were not married. Aaron was in the Air Force, and was stationed in Montana, where he had met Brittany, who had lived in Montana all her life. Aaron and Brittany began

residing together in October 2005. In 2007, Aaron was deployed to Afghanistan for his second tour. A few months before he was scheduled to leave, he found out that Brittany was pregnant. Aaron was not able to obtain a release from his deployment, but he was able to be present for H.Y.'s birth. He then returned from deployment in April 2008, when H.Y. was four months old. From that time until October 2010, H.Y. resided with both parents.

{¶ 5} Aaron and Brittany moved to Xenia, Ohio, in April 2009, and then moved into a home that Aaron had purchased in Clayton, Ohio, in April 2010. Aaron had been raised in Springfield, Ohio, and his parents and sister still lived in Springfield at the time of the custody hearing. Brittany had no relatives in the area; her relatives were located in various states, primarily in the West. Prior to the move to Clayton, Aaron and Brittany discussed potential school systems for their daughter, and the excellent Northmont public school system was a factor in their decision to move to Clayton.

{¶ 6} In October 2010, Aaron decided that he did not want to be in a relationship with Brittany anymore. Brittany became hysterical and begged him not to break up with her. When he remained firm that he no longer wished to continue the relationship, Brittany ran into the kitchen, grabbed a knife, and threatened to kill herself. Both parties testified that Brittany was acting irrationally.[1] Brittany also admitted that she had depression issues, but stated that she had not been on medication since 2008 or 2009. When Brittany threatened to commit suicide, Aaron did not call 911, because Brittany had threatened to commit suicide so many times previously.

{¶ 7} On New Year's Eve, 2010, Aaron and Brittany had been separated about three

---

[1] Brittany's story agrees in large part with Aaron's account, with the exception that Brittany thought she had tried to hand the knife to Aaron (which he did not take), with the suggestion that "Maybe we should just end it all or you should just kill me * * *." Trial Transcript, p. 100.

months. Aaron had been dating another woman for about three weeks, and had gone to Cincinnati to spend New Year's Eve with her. At about 4:00 a.m., he woke up to find Brittany standing at the foot of the woman's bed in Cincinnati. Brittany had knocked on the door of the house, and had told the woman that she was Aaron's wife and needed to speak with him. Again, both Aaron and Brittany agreed that her actions that night were irrational. Brittany later confessed that she had discovered Aaron's location by breaking into his house. Brittany crawled through an unlocked window, accessed his computer history, and found an address. She then came to the Cincinnati address at 4:00 a.m.

{¶ 8} After the parties' separation in October 2010, Brittany and Aaron exercised equal parenting time with H.Y. Brittany then joined the Air Force, and was sent to Florida and Texas in May 2011 for training. At that time, Aaron was no longer in the Air Force, and was working as a civilian employee at Wright Patterson Air Force Base (WPAFB). During the nine months that Brittany was out of state, from May 2011 through February 2012, Aaron had custody of H.Y., with Brittany's agreement. During that time, Brittany called H.Y. only once a week or every ten days, and returned home once, for a week, in December 2011.

{¶ 9} In February 2012, Aaron filed a petition in juvenile court, seeking legal custody of H.Y. From April through September 2012, the parties mostly followed a joint custody agreement, with Aaron having H.Y. at least fifty percent of the time. Aaron testified that when they disagreed, Brittany would threaten him with the standard order of visitation.

{¶ 10} A Guardian ad Litem (GAL) was appointed, and issued a report on November 1, 2012. The GAL visited both homes and interviewed both parents. He was also able to observe the child with all parties. The GAL noted that Aaron had asked Brittany to enter into shared

parenting, but she refused. According to the GAL, the child was very well bonded with her father and stepmother, and with her mother. Both residences were suitable, and neither parent had any criminal record or involvement with Children Services. The GAL thought that the parties should do shared parenting, but the mother would not agree.

{¶ 11} After summarizing his observations of the parties and their homes, the GAL recommended that Aaron be designated residential parent and legal custodian. The GAL noted that Aaron had been very involved in H.Y.'s life since she was born, was sole custodian when Brittany was out of state, and continued to maintain regular contact after Brittany returned. In addition, the GAL noted that Aaron had owned his own home for two and a half years, had maintained stable employment, and was married. In contrast, Brittany had no family in the area and was more likely than Aaron to move from the area. Finally, the GAL stated that he had considered the schools in Aaron's district as opposed to those in Brittany's district.

{¶ 12} On November 6, 2012, a magistrate held an evidentiary hearing. Following the hearing, the magistrate issued a decision awarding legal custody of H.Y. to Aaron, with parenting time granted to Brittany as agreed by the parties. However, if the parties could not agree, Brittany would exercise parenting time per the standard order of the court. The magistrate also concluded that Brittany should pay child support of $282.11 per month as long as she provided health insurance for H.Y.

{¶ 13} In December 2012, Brittany filed objections to the magistrate's decision. She also requested that the magistrate file proposed findings of fact and conclusions of law, and submitted her own proposed findings and conclusions. Aaron filed his proposed findings of fact and conclusions of law, which the magistrate adopted on December 11, 2012.

{¶ 14}   Subsequently, the trial court filed an order granting Brittany's request for findings of fact and conclusions of law.   The court also stated that the magistrate should file the findings of fact and conclusions of law 14 days after receipt of the transcript, apparently not realizing that findings of fact and conclusions of law had already been filed.   In addition, the court allowed Brittany time to file supplemental objections after the findings of fact and conclusions of law were filed.

{¶ 15}   A different magistrate was assigned to the case in January 2013.   In June 2013, Brittany filed a motion for new trial. The motion was based on the fact that the magistrate who heard the testimony had been removed from the juvenile court bench, and would be unwilling or unable to comply with the court's order.   In addition, Brittany filed supplemental objections to the magistrate's decision.   In January 2014, the trial court issued a decision overruling Brittany's objections to the magistrate's decision.   The court also overruled the request for a new trial. Brittany appeals from the judgment overruling her objections and overruling the motion for new trial.

II.   Did the Court Err in Denying the Request for a New Trial?

{¶ 16}   Brittany's First Assignment of Error states that:

The Trial Court Committed Irreversible [sic] Error When It Denied Mother's Request for a New Trial Based on the Removal of the Magistrate.

{¶ 17}   Under this assignment of error, Brittany contends that she should have been granted a new trial due to irregularities in the proceedings, including the removal of the magistrate who originally heard the case.   In this regard, Brittany argues that she cannot ascertain

the grounds for the magistrate's decision without the magistrate's independent findings of fact and conclusions of law. She further contends that under Civ.R. 63(B), no other judge or magistrate can step in and file the findings of fact and conclusions of law.

{¶ 18} Civ.R. 59(A)(1) provides that a motion for new trial may be granted based on "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial * * *." "The decision of the trial court whether to grant or deny a motion for a new trial will not be reversed absent an abuse of discretion." (Citation omitted.) *Miller v. Remusat*, 2d Dist. Miami No. 07-CA-20, 2008-Ohio-2558, ¶ 32. "An abuse of discretion means that the trial court's decision is unreasonable, arbitrary or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 19} The magistrate in the case before us was removed from the bench after the custody decision was issued. As noted, Brittany contends that, based on this fact, a new trial should have been granted under Civ.R. 63(B). In this regard, Civ. R.63(B) provides that:

> If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned or findings of fact and conclusions of law are filed, another judge designated by the administrative judge, or in the case of a single-judge division by the Chief Justice of the Supreme Court, may perform those duties; but if such other judge is satisfied that he cannot perform those duties, he may in his discretion grant a new trial.

{¶ 20} In interpreting this rule, courts have held that "a successor judge could not

render judgment if the judge's predecessor had not filed findings of fact and conclusions of law." *Arthur Young & Co. v. Kelly*, 68 Ohio App.3d 287, 294, 588 N.E.2d 233, 238 (10th Dist.1990), citing *Welsh v. Brown–Graves Lumber Co.*, 58 Ohio App.2d 49, 389 N.E.2d 514 (9th Dist.1978).

{¶ 21} However, "Civ. R. 63(B) does not apply to magistrates." *In re Gau*, 2d Dist. Montgomery No.18630, 2001 WL 523963, *3 (May 18, 2001), citing *Hartt v. Munobe*,67 Ohio St.3d 3, 8, 615 N.E.2d 617 (1993). *Accord State ex rel Dewine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632, ¶ 32.

{¶ 22} In *Hartt*, the Supreme Court of Ohio explained that:

[T]he procedural safeguards of Civ.R. 53 address the concerns that underlie Civ.R. 63. * * * A replacement judge's familiarity with the case is important because the judge's rulings finally determine the rights of the parties, subject only to appeal. A referee's findings and rulings, however, are advisory only and subject to the independent review and approval of the court. Civ.R. 53(E)(5). We do not suggest that a referee has no duty to become familiar with a referred case. Civ.R. 53(E)(2) and (6), allowing objections to a referee's report, safeguard against referees who fail to become conversant with the factual context of a case.

*Hartt* at 8.

{¶ 23} Consistent with *Hartt*, the trial court noted in its decision that under Juv.R. 40(D)(4)(a), a magistrate's decision is not effective unless adopted by the trial court. The trial court also stressed that it had an independent duty to review the record to make sure that the magistrate had properly decided the facts and appropriately applied the law. The trial court then

thoroughly reviewed the record and made specific findings regarding the objections and the magistrate's decision.

{¶ 24}     In view of the preceding discussion, we find no abuse of discretion on the part of the trial court.   As a further matter, we note that the magistrate did, in fact, file findings of fact and conclusions of law in December 2012, shortly after the hearing.   As a result, the parties were able to understand the basis of the magistrate's decision and to formulate objections.

{¶ 25}     Accordingly, the First Assignment of Error is overruled.

III.   Did the Trial Court Err in Awarding Custody to the Father?

{¶ 26}     Brittany's Second Assignment of Error states that:

Appellant Has Been the Primary Care-giver of the Child Since Birth and Should Continue as Sole Custodian.   A Decision Contrary Is Arbitrary, Unconscionable, and Unreasonable.

{¶ 27}     Under this assignment of error, Brittany contends that the trial court erred in awarding custody to Aaron because she had been H.Y.'s primary care-giver since birth, and changing the child's circumstances was arbitrary, unconscionable, and unreasonable.

{¶ 28}     The case before us concerns an initial custody determination involving an unmarried mother.   R.C. 3109.042, therefore, applies, and provides that:

An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child

described in this section shall treat the mother and father as standing upon an equality when making the designation.

**{¶ 29}** As a result, the court was required to treat Brittany and Aaron on an equal basis when designating custody. Brittany was not entitled to preferential treatment as the birth mother. More importantly, Brittany is incorrect in stating that she was the primary care-taker for the child. It is true that Aaron was deployed for four months after the child was born. However, upon his return in April 2008 until Brittany entered the Air Force in May 2011, he and Brittany equally parented H.Y. Aaron then had complete care-taking of the child for nine months, through February 2012. When Brittany returned, the parties resumed co-parenting on a reasonably equal basis. Thus, both parents were primary care-takers, and, on balance, Aaron spent more time with H.Y., given the mother's almost total absence for nine months.

**{¶ 30}** R.C. 3109.04(B)(1) requires courts to take into account the best interests of the child when making an original allocation of parental rights and responsibilities. In making this decision, the court is required to take all factors into consideration, including the factors in R.C. 3109.04(F)(1). We then review the award for abuse of discretion. *Davis v. Davis*, 2d Dist. Clark No. 2011-CA-71, 2012-Ohio-418, ¶ 11. (Citation omitted.)

**{¶ 31}** In evaluating the objections to the magistrate's decision, the trial court carefully reviewed the record and discussed each factor in R.C. 3109.04(F)(1). After discussing these factors, the trial court upheld the magistrate's decision to award custody to Aaron. Having reviewed the entire record, we cannot say that the trial court's decision was arbitrary, unreasonable, or unconscionable. Most of the factors were equal between the parents. However, some of Brittany's actions were of concern. When the minor child was only three

years old, Brittany chose to break into Aaron's home while he was not there, and to improperly access his computer for personal information. Had the police been called, or had Aaron chosen to press charges, Brittany could have been jailed, to her child's detriment. The fact that Brittany escaped consequences does not excuse the fact that her actions were ill-advised, and as Brittany, herself, admitted, irrational.

{¶ 32} Brittany argues that these acts, her threats of suicide, and depression took place long before the custody case, and that she had not demonstrated further instability. However, the acts in question occurred within a few years of the custody hearing, and Aaron did express some concern at the hearing about H.Y.'s safety when she was with Brittany. This was based on the fact that he was no longer present to have intimate insight into Brittany's moods. The magistrate and trial court were entitled to take these facts into consideration. As we stressed, the trial court was not required to give Brittany preference; the parties stood upon an equal footing.

{¶ 33} Based on the preceding discussion, the Second Assignment of Error is overruled.


IV. Did the Trial Court Improperly Apply the R.C. 3109.04(F)(1) Factors?

{¶ 34} Brittany's Third Assignment of Error, states as follows:

The Trial Court found the Magistrate Fully Considered What Was in the Child's Best Interest and Did Not Rely too Heavily on Appellant's Military Service, Past Mental Health Issues, or the Ohio Department of Education School Ratings, [and the Decision] Is Arbitrary, Unreasonable, and Unconscionable.

{¶ 35} Under this assignment of error, Brittany appears to be contending that the trial

court erred in awarding custody to Aaron because all the factors under R.C. 3109.04(F)(1) were equal or were weighted in her favor. According to Brittany, this state of affairs would not justify a change in custody. As we stressed, however, this was not a "change in custody." The reason Brittany had "custody" is because, as an unmarried female, she was granted the statutory designation of residential parent and legal custodian by R.C. 3109.042. That statute, however, clearly indicates that both parents are on an equal footing before the court when the initial order of legal custody is decided.

{¶ 36} Under the circumstances, we cannot say that the trial court abused its discretion in awarding custody to Aaron. We also do not find that the trial court or the magistrate placed undue emphasis on Brittany's military status. As we have noted previously, " '[i]t would be a considerable insult to those in the military service to suggest that their duty postings would be prima facie detrimental to children who live with them.' " *In re S.W.-S.*, 2d Dist. Miami No. 2013 CA 17, 2013-Ohio-4823 ¶ 37, quoting *In re S.M.T.*, 8th Dist. Cuyahoga No. 97181, 2012-Ohio-1745, ¶ 23.

{¶ 37} However, neither the magistrate nor the trial court focused on Brittany's military status as a negative. Instead, the trial court simply noted that Brittany had family spread across the country. The GAL also noted this fact in indicating that Brittany would be more likely to leave the area than Aaron would.

{¶ 38} We also note that the testimony at the hearing indicated that Brittany was in the Air Force Reserve, that her status for purposes of deployment was voluntary, and that it was unlikely that her unit would be deployed. Thus, her military status was not really a factor.

{¶ 39} Based on the preceding discussion, the Third Assignment of Error is overruled.

## V.  Conclusion

**{¶ 40}**    All of Brittany's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN and HALL, JJ., concur.

Copies mailed to:

James R. Kirkland
Christopher B. Epley
Hon. Anthony Capizzi