OPINION
Second petitioner-appellant Douglas B. Sellers appeals from the November 10, 1998, Judgment Entry of the Licking County Court of Common Pleas, Division of Domestic Relations.
 STATEMENT OF THE FACTS AND CASE
On November 20, 1981, appellant Douglas B. Sellers and appellee Shirley K. Sellers filed a Petition for Dissolution of Marriage in the Licking County Court of Common Pleas. A Decree of Dissolution of Marriage was filed on December 23, 1981, which incorporated the parties' November 20, 1981, Separation Agreement. The Separation Agreement specifically provided in relevant part, as follows:
 "Upon the execution of this Agreement, Douglas B. Sellers agrees to execute a quit-claim deed of all his right, title and interest in [specified] real estate to Shirley K. Sellers and Shirley K. Sellers shall assume the mortgage thereon at BancOhio and shall pay all insurance and taxes. Douglas B. Sellers shall remain in possession of said real estate until sold and he shall be responsible for all utilities while in possession. All equity when sold shall remain the property of Shirley K. Sellers."
Pursuant to the terms of the Separation Agreement, while appellee was granted custody of the parties' two minor children, appellant was ordered to pay child support in the amount of $30.00 per week per child, plus poundage. A quit claim deed conveying the subject property from appellant to appellee was recorded on August 24, 1982. However, via a deed notarized on September 29, 1984, and recorded on August 5, 1985, appellee conveyed her interest in the subject real property back to appellant "for valuable consideration paid." The deed further provided that appellant was to assume all taxes. A Judgment Entry was filed on September 16, 1992, granting appellee's motion for the issuance of a wage withholding order to appellant's employer. Pursuant to such entry, a wage withholding order was issued to Rockwell International for child support for the parties remaining minor child. The parties' other child had become emancipated on March 30, 1990. On February 7, 1994, appellant filed a motion to determine the amount of child support arrearage. The trial court, as evidenced by a Judgment Entry filed on May 19, 1994, found that appellant owed $17,180.00 to appellee for child support arrearages. The trial court, in its May 19, 1994, entry, stated as follows: "The court rejects the petitioner's statement that the parties had an agreement that he was to make the ex-wife's mortgage payments in lieu of child support." Effective March 18, 1994, the parties' other child became emancipated. A Notice of Emancipation was filed on December 2, 1994. The Child Support Enforcement Agency (CSEA), on August 6, 1997, filed a motion requesting that the trial court find appellant in contempt for failing to pay child support and for a judgment on the arrearage. The accompanying affidavit indicated that a child support arrearage existed in the amount of $8,836.58 as of July 17, 1997, and that appellant was in default of the same. On August 6, 1997, a Judgment Entry also was filed ordering appellant to appear before a Magistrate to show cause why he should not be held in contempt for failing to pay child support. Thereafter, a Qualified Domestic Relations Order was filed on August 25, 1997, stating in relevant part as follows: "Commencing as soon as administratively possible upon the acceptance of this order, Shirley K. Sellers . . . shall receive directly from [appellant's] pension plan a monthly benefit of $305.27. Said payments shall continue until the earlier of a further court Order, Shirley K. Sellers's or Douglas B. Seller's death or upon notification that the child support arrears have been paid in full."
Such order was amended, pursuant to an Amended Qualified Domestic Relations Order filed on October 6, 1997, to provide that it would be retroactive to August 1, 1997. Appellant, on October 14, 1997, filed a Motion for Contempt against appellee. Appellant, in his motion, specifically requested that appellee be held in contempt for failing to assume and pay any mortgage payments on the marital residence and any related expenses since 1982, forcing appellant to make all such payments, and that appellant be ordered to pay appellant's reasonable attorney fees. A Second Amended Qualified Domestic Relations Order was filed on October 21, 1997, stating that, commencing as of September 1, 1997, appellee would receive a monthly benefit of $305.27 directly from appellant's pension plan to be applied to child support arrearages. Both the August 6, 1997, Motion for Contempt filed by the CSEA and appellant's October 14, 1997, Motion for Contempt were consolidated pursuant to a Judgment Entry filed on November 18, 1997. Via a Magistrate's Order filed on December 2, 1997, appellant was granted leave to amend his Motion for Contempt "to include a prayer for relief for the granting of a judgment to the [appellant] for sums of money paid by him on behalf of the [appellee] in the form of mortgage payments, taxes and insurance on the marital residence." Thereafter, appellant's Amended Motion for Contempt was filed on December 4, 1997. A hearing on both Motions for Contempt was held on February 23, 1998, before a Magistrate. At the hearing, appellant moved several times for a judgment on the pleadings granting the relief sought in his Motion for Contempt. The Magistrate, in his Decision filed on March 27, 1998, recommended that appellant's motions for judgment on the pleadings be denied and that appellant be found in contempt for failing to pay child support from May 13, 1997, until January 28, 1998, leaving a stipulated arrearage of $7,262.16. The Magistrate further recommended that appellee be granted a judgment against appellant in such amount and that such judgment to be "satisfied through the payment of an additional $20.00 per week, plus processing charge, through a benefits assignment." (Emphasis added). Objections to the Magistrate's Decision were filed by appellant with leave of court, on May 11, 1998. Appellant filed an amendment to his objections two days later to correct a scrivener's error. Appellee, on May 22, 1998, filed a motion requesting an extension of time to respond to appellant's objections. Pursuant to an order filed the same day, appellee was granted an extension until May 31, 1998, to file her response to appellant's objections. Appellee's response to appellant's objections was filed on June 1, 1998, to which appellant filed a reply on June 9, 1998. Pursuant to an Opinion filed on July 13, 1998, the trial court overruled appellant's objections to the Magistrate's Decision and ordered that appellant's counsel submit a Judgment Entry consistent with the Magistrate's Decision within 14 days. Thereafter, on August 28, 1998, an Amended Magistrate's Decision was filed modifying the previous Magistrate's Decision by ordering appellant to pay only $20.00 a week rather than an additional $20.00 per week to satisfy the $7,265.16 in child support arrearages. The Magistrate in his decision, stated as follows: "This is a case where there is no current child support order so the original Magistrate's Decision should not have included the word additional." The trial court, pursuant to an opinion filed on September 16, 1998, accepted the Magistrate's Decision filed on March 27, 1998, and the August 28, 1998, Amended Magistrate's Decision. Appellee filed an objection to the Amended Magistrate's Decision on October 5, 1998. Appellant filed a response to the same on October 12, 1998, arguing, in part, that appellee's objections were not timely filed and, therefore, should not be considered by the trial court. Appellee filed her response to appellant's response on October 19, 1998. Stating that it found appellee's arguments to be persuasive and that appellee's failure to timely file objections was not her fault, the trial court, pursuant to an Opinion filed on October 22, 1998, vacated the Amended Magistrate's Decision and held that the Amended Qualified Domestic Relations Order "shall remain at $305.27 per month until the arrearages is paid in full." A final Judgment Entry was filed on November 10, 1998, wherein the trial court "adopt[ed] and incorporate[d] herein in its entirety the Magistrate's Decision of March 27, 1998, as amended by the opinions filed July 13, 1998, and October 22, 1998." It is from the November 10, 1998, final Judgment Entry that appellant prosecutes his appeal, raising the following assignments of error:
I
 THE TRIAL COURT ERRED IN PERMITTING APPELLEE TO FILE HER OBJECTION TO THE AMENDED MAGISTRATE'S DECISION OUT OF RULE.
II
 THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR JUDGMENT ON THE PLEADINGS FILED PURSUANT TO CIV. R. 12(C).
III
 THE TRIAL COURT ERRED IN MODIFYING THE DIVISION OF PROPERTY PREVIOUSLY ORDERED AT THE TIME THE DECREE OF DISSOLUTION WAS FILED ON DECEMBER 23, 1981.
IV
 THE TRIAL COURT ERRED IN MODIFYING THE AMENDED MAGISTRATE'S DECISION BY INCREASING APPELLANT'S MONTHLY PAYMENTS FROM $20.00 PER WEEK ($86.00 PER MONTH) TO $70.44 ($305.27) PER MONTH.
 I
In his first assignment of error, appellant argues that the trial court erred in permitting appellee to file her objection to the Magistrate's August 28, 1998, Amended Decision out of rule. Pursuant to Civ.R. 53(E)(3)(a), "[w]ithin fourteen days of the filing of a Magistrate's Decision, a party may file written objections to the magistrate's decision." Appellee's objection, therefore, should have been filed by September 11, 1998. On October 5, 1998, appellee filed her objection to the Amended Magistrate's Decision. Included with the same was a September 30, 1998, letter from the Manager of Post Office Operations in Charleston, South Carolina, to the Licking County CSEA stating as follows: "This is to inform your court that mail for Ms. Shirley Sellers, P. O. Box 15288, Surfside Beach, S.C., 29587-5288 was delayed or interrupted due to a forwarding error by the U.S. Postal Service. This error occurred between September 1, 1998, and September 29, 1998, and was through no fault of Ms. Sellers. Some of her mail forwarded during this time still has not reached her."
Based on such letter, the trial court, in its October 22, 1998, Opinion, found "in the interests of justice that [appellee's] objections should be considered, as the failure to file timely objections to the Amended Magistrate's Decision was not her fault." A trial court is not required to consider objections that are filed untimely. See James v. James (1995), 101 Ohio App.3d 668. However, "if . . . objections are filed after the expiration of the fourteen-day period allowed by Civ.R. 53(E)(2) but before the court's entering final judgment, the court may consider them sua sponte, and such consideration will be construed as the granting of leave to file late objections pursuant to Civ.R. 6(B)." Baker v. Baker (1990), 68 Ohio App.3d 402, 405. Clearly, even though appellee did not file a motion for leave to file her objection out of rule, the trial court granted appellee leave to file a late objection to the Amended Magistrate's Decision based on the letter from the United States Postal Service. We find that the trial court did not abuse its discretion in doing so. Appellant's first assignment of error is overruled.
 II
Appellant, in his second assignment of error, challenges the trial court's failure to grant appellant's Motion for Judgment on the Pleadings pursuant to Civ.R. 12(C). Appellant, on January 5, 1998, submitted a Request for Admissions to appellee. Appellee's responses to the same are as follows: "1. That the Judgment Decree of Dissolution of Marriage, filed on December 23, 1981 in Case Number 81-A-73397, approved and incorporated the Separation Agreement signed by Shirley K. Sellers and Douglas B. Sellers.
Response: Yes.
 2. That Exhibit A is a true, accurate and genuine copy of the Decree of Dissolution of Marriage filed on December 23, 1981, and Separation Agreement adopted by this court.
Response: Yes.
 3. That Article II (a) of the Separation Agreement attached as Exhibit A required Douglas B. Sellers to execute a quit claim deed of all of his right, title and interest in the real estate referred to therein to First Petitioner, Shirley K. Sellers, and that Shirley K. Sellers was to assume the mortgage thereon at BancOhio and was to pay all insurance and taxes.
 Response: Yes, until the property was sold. Mr. Sellers would not co-operate or allow property to be sold to anyone other than himself. He agrees to pay mortgage and insurance and taxes.
 4. That Exhibit B is a true, accurate and genuine copy of a statement for the time period shown therein, of all payments made on the mortgage referred to in Article II(a) of the Separation Agreement signed by the parties.
Response: I have no idea if it is true and accurate.
 5. That after November 20, 1981, First Petitioner, Shirley K. Sellers, did not make any mortgage payments on the mortgage referred to in Article II (a) of the Separation Agreement attached hereto as Exhibit A.
Response: I made the Dec. 1981 payment.
 6. That after November 20, 1981 Second Petitioner, Douglas B. Sellers made all of the mortgage payments on the mortgage referred to in Article II(a) of the Separation Agreement attached hereto as Exhibit A.
Response: No.
 7. That Exhibit C is a true, accurate and genuine copy of the mortgage referred to in Article II(a) of the Separation Agreement attached hereto as Exhibit A.
Response: Yes."
Thereafter, appellant, both orally at the February 23, 1998, hearing before a Magistrate and in writing, moved the trial court to deem requests 1, 2, 3, 4, 5, and 7 admitted by appellee. At the hearing, the Magistrate orally granted appellant's motion. See Transcript of proceeding at 28, 29. Based on appellee's deemed admissions, appellant then, both orally at the February 23, 1998, hearing and in writing, moved the court for judgment on the pleadings pursuant to Civ.R. 12(C) granting appellant the relief sought in his October 14, 1997, Motion for Contempt. In his October 14, 1997, motion, appellant had requested that appellee be held in contempt for failing to make the mortgage payments on the marital residence and that a judgment be entered against appellee in the amount of the sums paid by appellant for mortgage payments, taxes and insurance. Civ.R. 12(C) states as follows: "After the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings." After the Magistrate in his March 27, 1998, decision recommended that appellant's motion for judgment on the pleadings be denied, appellant filed an objection with the trial court. Pursuant to an Opinion filed on July 13, 1998, the trial court overruled appellant's objection. After appellant's Motion for Contempt was filed, the trial court signed an order to show cause directing appellee to appear and show cause why she should not be held in contempt. Clearly, appellant was seeking to find appellee in indirect contempt of court pursuant to R.C. 2705.02 for disregarding the trial court's order. Indirect contempt is "a contemptuous act outside the presence of the court. Contex, Inc. v. Consolidated Technologies, Inc. (1988), 40 Ohio App.3d 94, 96. Pursuant to R.C. 2705.03, an alleged indirect contemnor is entitled to notice and an opportunity for a hearing. Arthur Young Co. v. Kelly (1990), 68 Ohio App.3d 287. We agree with the trial court's statement in its July 13, 1998, Opinion that "[i]f courts were permitted to enter findings of contempt against [an] alleged contemnor based upon the pleadings, then "Show Cause" orders would be superfluous and R.C. 2705.03 would be judicially emasculated." As further noted by the trial court, "[d]ue to the special nature of contempt proceedings, judgments on the pleadings are contradictory and therefore not applicable at all". To hold otherwise, would render R.C. 2705.03 meaningless. Moreover, Civ.R. 12 (C) is not applicable since appellee was not required to file a written response to appellant's Motion to Show Cause, but rather was ordered to appear and show cause why she should not be held in contempt. The pleadings, therefore, were not "closed". Appellant' second assignment of error is overruled.
 III
In his third assignment of error, appellant contends that the trial court erred in modifying the property division previously ordered at the time the decree of dissolution was filed on December 23, 1981. As is stated above, pursuant to the decree, appellee was obligated to pay the mortgage, taxes and insurance on the marital residence while appellant remained in possession of the same until the property was sold. Thereafter, appellant conveyed all of his right, title and interest in the marital residence to appellee by a quit claim deed which was filed for record on August 24, 1982. Subsequently, appellee, pursuant to a deed notarized on September 29, 1984, and recorded on August 5, 1985, conveyed her interest in the same back to appellant for "valuable consideration paid." Appellant, on October 14, 1997, filed a Motion for Contempt seeking an order finding appellee in contempt for failing to make any mortgage payments on the marital residence since January, 1982, forcing appellant to make the same. After the Magistrate overruled such motion based upon a modification invoked by the parties, appellant filed an objection to the Magistrate's Decision. The trial court, in its July 13, 1998, Opinion overruling such objection, found that "the term `valuable consideration paid' included any and all claims by [appellant] for payments he made to satisfy [appellee's] responsibility under the decree for the mortgage on the real estate." Appellant now argues that the trial court, in so holding, improperly modified the division of property previously ordered at the time of the decree of dissolution. Appellant is correct in his assertion that trial courts generally lack jurisdiction to modify a property division. R.C. 3105.171(I) states that a "division or disbursement of property or distributive award made under this section is not subject to future modification by the court." See Zimmie v. Zimmie (1984)11 Ohio St.3d 94 and Wolfe v. Wolfe (1976), 46 Ohio St.2d 399. However, the trial court in this matter did not itself modify the parties' property division, but rather found that the parties had themselves modified the same. At the February 23, 1998, hearing before the Magistrate, appellant, when asked what he was going to do in exchange for appellee signing the deed to the marital property back over to him, stated clearly and unequivocally as follows: "I was to pay seventy-five hundred dollars and arrearages and taxes." Transcript of Proceedings at Page 40 (Emphasis added). Moreover, appellant also testified as follows:
 "Q. In the deeds that you presented that was turned over to you back in 1984 `85 I guess it is, it says for valuable consideration paid and you say you paid seventy-five hundred dollars for this property?
A. Yes ma'am.
 Q. It says nothing about the mortgage that you were to assume; were you to assume this property for free other than the seventy-five hundred?
 A. It doesn't say that I was to assume the mortgage but I assume I was to assume the mortgage."
Transcript of Proceedings at 47 — 48.
It is apparent, based upon such testimony, that the trial court did not modify the parties' property division but rather found that appellant's payment of the mortgage arrearages was part of the consideration for the transfer of the marital residence from appellee to appellant. We find that the trial court did not error in its finding. Since the trial court did not modify the parties' property agreement, appellant's third assignment of error is, therefore, overruled.
 IV
In his final assignment of error, appellant claims that the trial court erred in modifying the Amended Magistrate's Decision by increasing appellant's monthly payments from $20.00 per week ($86.00 per month), as recommended by the Magistrate, to $70.44 per week ($305.27 per month). Pursuant to a Magistrate's Decision filed on February 29, 1996, the Magistrate had recommended that appellant's child support arrearages, which then totaled $13,604.09, should be paid at the rate of $75.00 per week plus poundage through a wage withholding order. A Journal Entry adopting the Magistrate's Decision was filed on March 22, 1996. Up until the time of his retirement from Rockwell International on May 1, 1997, such amount was withheld from appellant's gross wages. After appellant's retirement, the CSEA obtained a Qualified Domestic Relations Order to withhold $305.27 per month from appellant's pension. Thereafter, the Magistrate, in his March 27, 1998, decision, recommended that appellant be ordered to pay an additional $20.00 per week to satisfy the child support arrearages, which then totaled $7,265.16 plus interest. In the Amended Magistrate's Decision, which was filed on August 28, 1998, the Magistrate, finding that "[t]his is a case where there is no current child support order," found that the original Magistrate's Decision should not have included the word "additional". The Magistrate, therefore, recommended that appellant pay only $20.00 per week to satisfy the child support arrearages. In her October 5, 1998, objection to the Amended Magistrate's Decision, appellee objected to the Magistrate's recommendation to lower appellant's payment on the child support arrearage from $305.27 per month, as ordered by the Qualified Domestic Relations Order filed on October 21, 1997, to only $20.00 per week. The trial court, in its October 22, 1998, Opinion, stated as follows: "The court finds the argument of [appellee] to be persuasive. The Amended Magistrate's Decision is vacated and the Amended Qualified Domestic Relations Order shall remain at $305.27 per month until the [child support] arrearage is paid in full."
The trial court clearly did not increase appellant's child support arrearage repayment obligation, but rather held that that the amount should remain at $305.27 as set forth in the Qualified Domestic Relations Order. The trial court, therefore, did not error in rejecting the Magistrate's recommendation. Appellant's fourth assignment of error is overruled.
The judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed.
By Edwards, J. Hoffman, P.J. and Farmer, J. concur