OPINION
{¶ 1} Paula J. Rank appeals from the trial court's decision and entry sustaining appellee Jerry R. Rank's objections to a magistrate's opinion and dismissing a domestic violence civil protection order.
 {¶ 2} Mrs. Rank advances two related assignments of error on appeal. First, she contends the trial court's ruling is contrary to law and against the manifest weight of the evidence. Second, she argues that the trial court abused its discretion by sustaining Mr. Rank's objections and dismissing the civil protection order issued by the magistrate. Upon review, we conclude that the trial court's ruling is neither contrary to law nor against the manifest weight of the evidence. We also find that the trial court did not abuse its discretion. Accordingly, we will overrule Mrs. Rank's assignments of error and affirm the trial court's judgment.
 I. {¶ 3} The present appeal stems from a petition for a domestic violence civil protection order that Mrs. Rank filed on December 12, 2002, after an incident the previous day. The petition alleged that Mr. Rank, her husband, had a history of "verbal abuse" and had used "extreme profanity" in front of the parties' children. It also alleged that on December 11, 2002, Mr. Rank had "knocked [Mrs. Rank] to the ground after verbally assaulting [her.]" In addition, the petition accused Mr. Rank of ripping a telephone from the wall in an effort to get it away from Mrs. Rank.
 {¶ 4} Based on the foregoing allegations, the trial court immediately issued an ex parte civil protection order under R.C. §3113.31. The matter then proceeded to a December 19, 2002, hearing before a magistrate. Uncontroverted testimony established that Mr. Rank had become upset on the morning of December 11, 2002, when he could not find a slip of paper with the telephone number of a person whose call he wished to return. He accused Mrs. Rank of taking the paper to prevent him from making the call, and she denied the allegation. The parties' testimony diverges over what occurred next.
 {¶ 5} According to Mrs. Rank, her husband approached her yelling and cursing about the paper. In response, Mrs. Rank testified that she threatened to call the police and grabbed a telephone. Mrs. Rank stated that her husband then "shoved [her] in the floor from behind" and yanked the telephone from the wall as she attempted to make the call. Mrs. Rank further testified that her husband also broke a second telephone and resumed questioning her again a few minutes later, cursing and inquiring about the missing slip of paper. At that point, she decided to go next door to use a neighbor's telephone to call the police. When she opened the front door, however, she was met by two Vandalia police officers who had responded to Mrs. Rank's call, which apparently had been completed before Mr. Rank disabled the telephones. After speaking briefly with the parties, the officers left without arresting Mr. Rank or filing any charges.
 {¶ 6} For his part, Mr. Rank denied cursing and screaming at his wife. He testified that he had placed the slip of paper in the pocket of clothes that were hanging on his dresser. He later heard footsteps in the room and discovered that the paper was missing. When he confronted Mrs. Rank about the paper, she denied taking it. According to Mr. Rank, he remembered the number, even without the paper, and he decided to dial it right away before forgetting it. Mr. Rank testified that when he tried to dial the number, Mrs. Rank attempted to take the telephone away. He stated that she slipped and fell as he pulled away from her. According to Mr. Rank, his wife then tried to obtain a telephone herself so that she could call the number. To prevent her from doing so, he pulled the telephone cord from the wall. Mr. Rank denied pushing, hitting, or threatening his wife.
 {¶ 7} Vandalia police officer Todd Hunt also testified at the hearing. Although Hunt was not one of the officers who visited the Rank residence on the morning of December 11, 2002, he spoke with Mrs. Rank at the police station that afternoon. According to Hunt, Mrs. Rank arrived at the police station and told him about what had transpired earlier. Hunt testified that he asked Mrs. Rank whether her husband had threatened her or had used any violence against her, and she responded negatively. Hunt did acknowledge, however, that Mrs. Rank reported Mr. Rank cursing at her and pushing her while they were scuffling over an object, but the officer did not recall Mrs. Rank telling him that her husband had knocked her to the floor.
 {¶ 8} The only other witness to testify was Mrs. Rank's mother, Joan Henderson. In relatively brief testimony, Henderson testified that Mr. Rank had a temper and that she had seen him screaming at Mrs. Rank on prior occasions.
 {¶ 9} Following the hearing, the magistrate filed a January 6, 2003, decision finding that Mr. Rank had committed domestic violence, as defined by R.C. § 3113.31(A)(1), and that Mrs. Rank was in danger of future domestic violence. In reaching this conclusion, the magistrate found that Mr. Rank had pulled the telephone from the wall in an effort to prevent Mrs. Rank from calling for assistance. The magistrate also found credible Mrs. Rank's testimony that her husband had been yelling at her and had pushed her to the ground. Additionally, the magistrate rejected as not credible Mr. Rank's testimony that Mrs. Rank simply fell down. Based on Mr. Rank's words and actions, the magistrate found it reasonable for Mrs. Rank "then to be in fear that serious physical harm would follow in the future." As a result, the magistrate issued a civil protection order that, inter alia, directed Mr. Rank to vacate the marital residence and not to have any contact with Mrs. Rank for five years. The trial court immediately adopted the magistrate's decision, as permitted by Civ.R. 53(E)(4)(c).
 {¶ 10} Mr. Rank subsequently filed objections to the magistrate's ruling, arguing that the finding of domestic violence was against the manifest weight of the evidence. In a June 26, 2003, decision and judgment entry, the trial court agreed. After noting that it independently had reviewed the evidence, the trial court made the following findings:
 {¶ 11} "The incident giv[ing] rise to the filing of the petition for a civil protection order occurred on December 11, 2002. Between 7:30 and 8:30 a.m., a phone call was made to the parties' residence. As a result of the phone call, the parties engaged in an argument, name-calling and pushing incidents. Petitioner alleges that the respondent shoved her to the floor during the argument and ripped the phone from the wall preventing her from making phone calls. Respondent alleges that the petitioner slipped and fell while trying to grab the phone from his hands. He did admit to pulling the phone out of the wall track.
 {¶ 12} "Pursuant to the testimony of the parties, the Vandalia police responded to a call made by the petitioner of a domestic violence disturbance. The police were dispatched at 8:01 a.m. on that morning in response to petitioner's call. Defendant's Exhibit H. The Court finds based upon the petitioner's call to the police and the immediate police response that she was not prohibited from using the telephone to call for assistance.
 {¶ 13} "Officer T. Hunt of the Vandalia Police Department testified as a witness in this matter. On direct examination, he testified that he specifically asked the petitioner if, during the incident, the petitioner had threatened her or used any violence against her. Transcript, December 19, 2002 at 64. He indicated that she stated there was no violence. Id. That statement is consistent with the report submitted as Defendant Exhibit H.
 {¶ 14} "Petitioner testified that throughout the marriage the respondent has frequently called her names and that they had engaged in arguments throughout their marriage. She further testified that the respondent is subject to significant mood swings and is under medication for this condition. She also testified that she is under medication for mild depression.
 {¶ 15} "The Court finds based upon the evidence presented that the most reliable testimony is that of Officer Hunt. The petitioner was asked directly on the day of the incident whether in fact she was threatened or harmed by the respondent. Her response to the direct inquiry of the investigation of the police department was that there had been no violence and she was not threatened. The Court finds that the respondent has not committed an act of domestic violence as defined by R.C. §3113.31."
 {¶ 16} After making the foregoing findings, the trial court sustained Mr. Rank's objections and vacated the civil protection order. This timely appeal followed.
 II. {¶ 17} In her first assignment of error, Mrs. Rank argues that the trial court's ruling is contrary to law and against the manifest weight of the evidence. Under this assignment of error, Mrs. Rank specifically argues that (1) an arrest or the filing of criminal charges is not a prerequisite to receiving a domestic violence civil protection order, (2) a trial court may not delegate its duty as fact-finder in a civil domestic violence action to one or more police officers conducting a criminal investigation, (3) a complainant is not foreclosed from seeking a civil protection order simply because a police officer determines that an incident does not warrant the filing of criminal charges; and (4) a trial court should consider both physical and verbal acts that place a petitioner in fear of imminent serious physical harm when considering the issuance of a civil protection order.
 {¶ 18} Upon review, we find Mrs. Rank's first assignment of error to be unpersuasive. With regard to the first of the four specific arguments set forth above, we conclude that the trial court's ruling is not contrary to law. In reaching this conclusion, we agree that neither an arrest nor the filing of criminal charges is a prerequisite to obtaining a civil protection order under R.C. § 3113.31. Unfortunately for Mrs. Rank, the trial court never suggested otherwise. The trial court's decision simply does not indicate that it ruled against Mrs. Rank based on a mistaken belief that a civil protection order must be preceded by an arrest or the filing of criminal charges. We also agree that a trial court may not delegate its fact-finding function to a non-judicial officer such as a policeman. Although Mrs. Rank believes the trial court did so, we do not agree. The trial court cited officer Todd Hunt's testimony as the evidentiary basis for its own independent findings of fact. Nothing in the record suggests that the trial court actually delegated its fact-finding responsibility to the police officer. We also agree with Mrs. Rank that a complainant is not foreclosed from seeking a civil protection order simply because a police officer determines that an incident does not warrant the filing of criminal charges. Once again, however, the trial court did not declare otherwise. Finally, we agree that a trial court confronted with a petition for a civil protection order should consider any physical and verbal acts that place a petitioner in fear of imminent serious physical harm. Indeed, the trial court appears to have done so. The trial court noted the existence of both "name-calling" and "pushing" on the morning in question. The trial court also noted Mrs. Rank's allegation that Mr. Rank "shoved her to the floor during the argument and ripped the phone from the wall preventing her from making phone calls."
 {¶ 19} Mrs. Rank's real argument appears to be that the trial court did not sufficiently credit her testimony, which included disputed allegations that Mr. Rank repeatedly cursed her and also shoved her to the floor, placing her in reasonable fear of being harmed. This argument challenges the weight of the evidence to support the trial court's ruling. In considering a challenge to the weight of the evidence, we must review the entire record, independently weigh the evidence and all reasonable inferences, and assess the credibility of witnesses, to determine whether in resolving conflicts in the evidence the trial court clearly lost its way and created a manifest miscarriage of justice.Lovett v. Wenrich, Montgomery App. No. 19497, 2003-Ohio-4587. In conducting this review, "`we will not disturb the choice made by the trier of fact between credible witnesses and their conflicting testimony unless it is so incredible that it defies belief.'" In re TestamentaryTrusteeship of Cheek, Montgomery App. No. 19513, 2003-Ohio-2515, quotingHenderson v. Fillinger, Greene App. No. 97 CA 110, 2002-Ohio-104. Finally, in reviewing a trial court's decision on a petition for a domestic violence civil protection order, this court has employed an abuse-of-discretion standard. See, e.g., Reynolds v. Reynolds (Jan. 26, 2001), Montgomery App. No. 18436; Strong v. Bauman (May 21, 1999), Montgomery App. Nos. 17256, 17414.
 {¶ 20} In the present case, the trial court found that there had been "name-calling" and "pushing," presumably by Mr. Rank. The trial court also found that Mr. Rank had pulled a telephone from the wall. The trial court placed particular weight, however, on the testimony of officer Hunt, whom the court found to be the most credible witness. As noted above, Hunt testified that Mrs. Rank denied her husband having threatened her or having used any violence against her. Although the trial court was entitled to credit Hunt's testimony, we note that Mrs. Rank's denial of any threats or violence by Mr. Rank arguably is at odds with the trial court's express finding that Mr. Rank "pushed" her. Nevertheless, even if pushing occurred, as the trial court found, and even if any pushing is considered a form of violence, the trial court's finding of no "domestic violence," as defined by R.C. § 3113.31(A), is not against the manifest weight of the evidence.
 {¶ 21} Section 3113.31(A) defines "domestic violence," in relevant part, as attempting to cause or recklessly causing bodily injury to a household member, or as placing a household member in fear of imminent serious physical harm by the threat of force. The record does not demonstrate that Mr. Rank caused or attempted to cause bodily injury to Mrs. Rank even if he did push her, and she does not argue otherwise. Rather, Mrs. Rank argues that her husband placed her in fear of imminent serious physical harm by the threat of force. In support, she cites Mr. Rank's alleged "verbal abuse, raging, knocking her down, holding her down, forcibly removing two telephones from her reach and violently disabling both of them, all of which occurred in the presence and/or hearing of two young children[.]"
 {¶ 22} On the record before us, however, we cannot say that the trial court's finding of no domestic violence is against the manifest weight of the evidence. Contrary to Mrs. Rank's argument on appeal, the trial court made no finding that Mr. Rank held her down or even knocked her to the ground, and Mr. Rank did not admit having done so. Although Mrs. Rank insists that she feared imminent serious physical harm, the trial court was entitled to credit officer Hunt's testimony that she denied her husband having threatened her or having used any violence against her. In addition, the fact that Mr. Rank cursed her, disabled two telephones, and pushed her does not establish that the trial court's ruling is against the weight of the evidence. With regard to the pushing incident, the trial court appears to have found that it was minor, particularly in light of Mrs. Rank's statement to officer Hunt that her husband did not use any violence against her. Thus, the record supports a conclusion that Mrs. Rank was pushed but nevertheless did not fear imminent serious physical harm. With regard to the verbal abuse, Mrs. Rank alleged that her husband had a long history of using "extreme profanity" without any evidence that he ever had threatened or caused physical harm. As a result, it is eminently possible that the cursing did not place Mrs. Rank in fear of imminent serious physical harm because Mr. Rank became foul-mouthed, but not physically violent with her, when angry. The trial court certainly did not abuse its discretion in failing to find that Mrs. Rank feared imminent serious physical harm by threat of force, particularly in light of her denial to officer Hunt that Mr. Rank had threatened her. Finally, the fact that Mr. Rank disabled the telephones does not mean that the trial court erred in finding no domestic violence. Although Mr. Rank's words and actions on the morning in question reveal a heated dispute, we have reviewed the entire record, independently weighed the evidence and all reasonable inferences, and considered the credibility of witnesses, and we find that in resolving conflicts in the evidence, the trial court did not clearly lose its way and create a manifest miscarriage of justice. The trial court's judgment is not against the weight of the evidence, and we find no abuse of discretion in the trial court's determination that Mr. Rank did not commit an act of domestic violence under R.C. § 3113.31.
 III. {¶ 23} In her second assignment of error, Mrs. Rank argues that the trial court abused its discretion by sustaining Mr. Rank's objections and dismissing the civil protection order. In support, Mrs. Rank again argues that the trial court improperly delegated its fact-finding role to officer Hunt and ignored overwhelming credible evidence supporting the issuance of a civil protection order.
 {¶ 24} Upon review, we note that this assignment of error merely repeats the arguments raised in Mrs. Rank's first assignment of error. Accordingly, we find it to be without merit.
 IV. {¶ 25} Based on the reasoning and citation of authority set forth above, we overrule Mrs. Rank's assignments of error and affirm the judgment of the Montgomery County Common Pleas Court, Domestic Relations Division.
Fain, P.J., and Young, J., concur.
(Hon. George M. Glasser, Retired from the Sixth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).