OPINION
{¶ 1} Thomas L. Chapman ("Thomas") appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which granted the petition of his former wife, Catherine R. Chapman ("Catherine"), for a civil protection order.
 {¶ 2} The Chapmans have four children, two of which are currently minors. The record suggests that both parents resided together with their minor children, Kelsey and Elizabeth, until September 24, 2001.
 {¶ 3} On May 29, 2002, Catherine sought a civil protection order against Thomas. On June 4, 2002, a hearing was held before a magistrate. During the hearing, Catherine and Thomas testified regarding several incidents during which Thomas allegedly had threatened her. Catherine testified that in April 2000, Thomas had thrown a set of keys at her; the keys bounced off the floor and hit her in the face near her eye. She stated that she had bled and had a "black and blue mark" for a few days. Thomas testified that the key incident "never happened." He stated that the family was vacationing in Annapolis, Maryland, and that Catherine became belligerent when they were checking out of the motel room. When they got in the car, Catherine had no marks on her face.[1] He also testified that perhaps she was referring to an incident several months before. At that time, he was "getting the keys down from the pass-through from the beginning of the hallway into the kitchen, and they fell off the shelf — and glanced off of her face on the way down." On July 4, 2000, Thomas allegedly picked up Catherine, shoved her against a desk and threw her against a wall. Catherine stated that she had had a broken shoulder at the time. Thomas testified that Catherine had kicked down the door to Kelsey's room, grabbed her by the hair, dragged her into his bedroom, and beat her. Thomas testified that he had pulled Catherine off of Kelsey, who was twelve years old at the time. He stated that Catherine left the house after the incident, and he questioned whether her shoulder was broken.
 {¶ 4} Catherine testified that on April 3, 2002, when she was traveling out-of-state on a spring break vacation, Thomas had left threatening telephone messages, asking where the children were.
 {¶ 5} On April 12, 2002, Catherine had picked up their daughter, Elizabeth, from Thomas' home while he was not there and had taken her to Girl Scout camp. She testified that Thomas came to the camp with a police officer and "started yelling and screaming and ranting at [her]," saying that he needed to "teach [her] what the laws were and how to respect the laws, and he was going to force me to obey the laws, and he would do whatever it took to destroy me." She testified that his gestures and movements were "very intimidating." She further indicated that Thomas had scared several of the girl scouts, causing them to cry. Thomas testified that prior to April 2002, Catherine had taken the children on weekends when he was supposed to have custody of them. He stated that on April 12, 2002, he went to pick up Elizabeth from Girl Scout camp, because Catherine had taken her "illegally." Thomas forcibly took his daughter from the camp. He denied that he had made any threatening gestures to Catherine.
 {¶ 6} Thomas further testified that Catherine's visitation with Kelsey ended at 8:00 a.m. on Monday mornings, at which time Catherine was required to take Kelsey to school, to a day care provider or to his home. On Monday, May 6, 2002, Kelsey had called her father, informing him that she was sick and that she wanted to stay with her mother. Thomas testified that he told his former wife that she had to return Kelsey to him. After consulting with her attorney, Catherine decided that she would keep her daughter with her rather than have Thomas' mother, who had been ill and was unable to care for Kelsey, watch Kelsey. Both parties testified that Thomas had appeared at Catherine's apartment with a police officer to retrieve Kelsey. Catherine testified that "[h]e was extremely agitated" and that he was "raising his arms and gesturing and * * * getting closer to me and moving back." She stated that she was fearful of some sort of physical harm by him, because "he has done it in the past where's gotten upset and it has come into physical confrontation." Thomas stated that he would not allow Kelsey to stay with her mother when she was sick on Monday, May 6, 2002, because Catherine had over-medicated their children in the past and she is abusive to Kelsey specifically. Thomas also indicated that he would have been home with Kelsey, as he works from his home. He denied threatening Catherine on May 6, 2002.
 {¶ 7} In addition, Catherine testified that Thomas owns many high-powered weapons, an AK47 automatic weapon, a high-powered rifle and several handguns. In response to whether he had any weapons, Thomas testified that he does not own an AK47, and that since the divorce case began, he took all of his weapons to his father's home. Catherine further indicated that Thomas had threatened to destroy her physically and financially, including during the confrontations on April 12, 2002, and May 6, 2002. Catherine testified that police officers witnessed these statements, but that they had told her that there was nothing they could do to stop him from verbally harassing her without an order. It is undisputed that Catherine had filed a prior petition for a protection order based on the incidents in 2000. Catherine testified that she dismissed that petition based on an agreement with Thomas.
 {¶ 8} As an additional witness, Thomas presented the testimony of the couple's nineteen year old son, Chris, a student at Miami University. Chris stated that he had never seen his father assault his mother nor heard him threaten her. Chris testified that his mother has been angry and verbally abusive toward Thomas and the children, but his father has not. He stated that he did not notice any injury to his mother during their trip to Annapolis. On July 4, 2000, he heard fighting and screaming, but did not witness anything.
 {¶ 9} We note that the parties testified that law enforcement officers witnessed the confrontations on April 12, 2002, and May 6, 2002, yet none of the officers was called as a witness during the hearing. In addition, although the argument at the Girl Scout camp was witnessed by others, no one from the camp testified. Kelsey likewise did not testify to her parents' conduct on July 4, 2000. The parties also referenced hearings and proceedings from their divorce case, as well as police reports. However, the parties did not support those references with evidence during the hearing. Accordingly, the trial court did not consider the police reports nor any of the divorce case filings.
 {¶ 10} On June 26, 2002, the magistrate issued a permanent civil protection order, based on the events in 2000 and 2002. The magistrate, alluding to a "subjective standard," granted the order based on Catherine's perception that Thomas' actions represented a threat to her. Thomas filed objections to the magistrate's decision. He argued that the magistrate erred in failing to take into account "objective" testimony which contradicted Catherine's perception of events.
 {¶ 11} On November 19, 2002, the trial court overruled the objections, finding that the magistrate had competent, credible evidence to support the issuance of the order. The court noted that the magistrate had the best opportunity to evaluate the credibility and demeanor of the witnesses and that Chris Chapman's testimony was considered by the magistrate but apparently deemed insufficient by the magistrate to negate Catherine's "subjective evidence."
 {¶ 12} Thomas appeals the trial court's judgment, arguing that the judgment is against the manifest weight of the evidence.
 {¶ 13} In his appeal, Thomas asserts that the evidence before the trial court does not support the issuance of a civil protection order. He argues that the incidents in 2000 were remote in time and should not be considered. He further argues that the events on April 12, 2002, and May 6, 2002, do not indicate that Catherine was reasonably placed in fear of imminent physical harm. He states that the fact that he brought a police officer with him suggests that he did not intend to harm his ex-wife. Thomas contends that the trial court should have employed a "reasonableness" standard as to whether his former wife was placed in fear of physical harm.
 {¶ 14} A petition for a domestic violence civil protection order shall be granted if a person places a family or household member in fear of imminent physical harm by the threat of force. R.C. 3113.31(A)(1)(b). The petitioner must show by a preponderance of the evidence that conditions exist which justify the issuance of such an order. Felton v. Felton (1997),79 Ohio St.3d 34, 679 N.E.2d 672, paragraph two of the syllabus; Siouffiv. Siouffi (Dec. 18, 1998), Montgomery App. No. 17113.
 {¶ 15} We have noted that "[f]ear always has a subjective element to it." Kreuzer v. Kreuzer, Greene App. No. 2001-CA-49, 2002-Ohio-105, citing Eichenberger v. Eichenberger (1992),82 Ohio App.3d 809, 815, 613 N.E.2d 678. In Reynolds v. Reynolds
(Jan. 26, 2001), Montgomery App. No. 18436, we stated that "the standard for reviewing [the petitioner's] fear is subjective, that is, whether her fear was reasonable under the particular circumstances of her particular situation, which must be established by a preponderance of the evidence." Id., citingFelton, supra. Notwithstanding our use of the word "subjective," it is clear from the entire sentence that we intended to say that the standard for reviewing a petitioner's fear is — at least in part — an objective one. The word "reasonable" connotes an objective test. In other words, a petitioner's irrational or unsubstantiated fear is insufficient to warrant the issuance of a protective order. "If an unsubstantiated concern for safety were enough to justify the issuance of protective orders, there would be no need for hearings on these matter." Toohill v. Toohill (Aug. 18, 2000), Greene App. No. 99-CA-138. Rather, "[t]hreats of violence constitute domestic violence if the fear resulting from those threats is reasonable." Kreuzer v. Kreuzer, Greene App. No. 2001-CA-49, 2002-Ohio-105.
 {¶ 16} In Kreuzer, we affirmed the trial court's issuance of a civil protection order, stating: "We have read the transcript of the hearing and it fully supports the court's finding that Stacy was in a state of fright, because of fear of imminent harm by the appellant[;] the court found that Stacy's fear was reasonable because of her knowledge and even past subjection to Mr. Kreuzer's bizarre, threatening, and menacing acts over a period of many years since his divorce from Stacy's mother." Thus, a petitioner for a civil protection order must demonstrate both that she was in fear (subjective) and that such fear was reasonable under the circumstances (objective). "[T]he reasonableness of a petitioner's fear should be measured with reference to her history with respondent." Parrish v. Parrish
(2002), 95 Ohio St.3d 1201, 1208, 2002-Ohio-1623, 765 N.E.2d 359
(Lundberg Stratton, J., dissenting), citing Eichenberger,
supra.
 {¶ 17} We review a trial court's decision on a petition for a civil protection order for abuse of discretion. Rank v. Rank,
Montgomery App. No. 19986, 2003-Ohio-6524. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. The trial court's determination will not be disturbed where the record shows sufficient, credible evidence to support a finding, by a preponderance of the evidence, that the respondent knowingly caused the petitioner to believe that he would cause her physical harm and calculated the threat to an extent to cause a person of reasonable sensibility to fear physical harm would occur. See Strong v. Bauman (May 5, 1999), Montgomery App. Nos. 17256, and 17414.
 {¶ 18} Upon review of the transcript, we conclude that the issuance of the civil protection order was neither an abuse of discretion nor against the manifest weight of the evidence. The magistrate and the trial court apparently chose to believe Catherine's testimony that Thomas' actions put her in fear of physical harm. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. As to whether that fear was reasonable, the court was left with the conflicting evidence of Catherine and Thomas. There were no witnesses, other than the parties, who testified as to what actually occurred on April 2000; July 4, 2000; April 12, 2002; and May 6, 2002. Although their adult son testified that he had never seen Thomas threaten or assault Catherine and that his mother would become verbally abusive, he did not witness any of the events at issue. Accordingly, the magistrate and the trial court could have reasonably found that Chris's testimony was not sufficient "objective evidence" to support his father's version of events.
 {¶ 19} The magistrate and the trial court also could have reasonably credited Catherine's rendition of events and her testimony that Thomas's verbal attacks have become increasingly more violent during the past two months, including threats to kill her. Moreover, although Thomas disputed Catherine's contention that he owned an AK47, he did not contest her statement that he owned a high-powered rifle and several handguns. His testimony that he had placed them under "lock and key" at his father's residence does not refute Catherine's suggestion that he has access to weapons to carry out his alleged threat. In addition, the presence of a police officer does not necessarily support Thomas' version of events, particularly in light of Catherine's testimony that police officers had told her they could not stop Thomas' abusive behavior without a protective order. Accordingly, although both the magistrate and the trial court could have chosen to credit Thomas' accounts of the confrontations, they had credible, competent evidence to support the issuance of the civil protection order. The trial court's judgment was neither an abuse of discretion nor against the manifest weight of the evidence.
 {¶ 20} Thomas Chapman's assignment of error is overruled.
 {¶ 21} The judgment of the trial court will be affirmed.
Brogan and Young, JJ., concur.
[1] In her letter to this court, Catherine states that "[t]his is not the first time he attacked me on a vacation. He attacked me on a vacation to Florida in December 1997 in front of a movie theater and several men interceded and made Mr. Chapman leave the parking lot." This incident was not raised in the trial court, and we will not consider it on appeal. In addition, we will not consider her statement that her former husband has failed to pay income taxes. That evidence also was not presented to the trial court and it is not relevant to the issues before us.