OPINION
{¶ 1} Jeffrey Hunter, Sr., appeals from a judgment of the Montgomery County Common Pleas Court, Domestic Relations Division, which granted the petition of his wife, Connie Marie Hunter, for a civil protection order. Connie Hunter, appellee, filed a petition for an Ex Parte Civil Protection Order (hereafter CPO) on September 24, 2004. The magistrate granted the CPO and Jeff Hunter, appellant, filed objections thereto. On September 23, 2005, the trial court issued its final order overruling Mr. Hunter's objections.
 {¶ 2} The facts adduced before the magistrate establish that Mr. and Mrs. Hunter had been married for twenty-three years. They have a son who was eighteen years old at the time of these proceedings. The testimony establishes that Mr. Hunter was fifty years old and employed as a prosecutor in the Greene County Prosecutor's Office. Mrs. Hunter was forty-eight years old and employed at Greene Memorial Hospital. Mrs. Hunter testified that on the morning of September 24, 2004, which precipitated the filing of the requested CPO, she informed her husband of an appointment she had to see an attorney. She testified Mr. Hunter prevented her from leaving to see her attorney and he forced her head into his groin. She testified he knelt on her lower leg until she screamed in pain. She maintained he was upset with her seeking legal counsel and was also concerned she would ruin him.
 {¶ 3} Mrs. Hunter also testified that after Mr. Hunter left for work, he returned and followed her in her vehicle. She testified that he got out of his vehicle at a stoplight (near the courthouse where he works) and approached her car, trying to open the door. She maintained that Mr. Hunter tried to intimidate her by saying, "no one will believe you" ostensibly because of his position in the prosecutor's office.
 {¶ 4} The record reveals that Mrs. Hunter complained of past incidents of domestic violence, including spitting in her face, throwing her down and various acts of sexual aggression.
 {¶ 5} Mr. Hunter testified in his own behalf, maintaining his conduct was neither criminal nor threatening. He claimed that he only wanted Mrs. Hunter to be discrete about their private life. He also maintained that Mrs. Hunter is bipolar, lacks credibility, and asserts her petition was borne out of a desire to get him out of their marital home.
 "APPELLANT'S FIRST ASSIGNMENT OF ERROR {¶ 6} "THIS COURT SHOULD OVERTURN THE TRIAL COURT'S DECISION BECAUSE THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} Mr. Hunter asserts the trial court failed to recognize inconsistencies in Mrs. Hunter's testimony, failed to credit the testimony of a colleague in the prosecutor's office, failed to credit the testimony of his eighteen-year-old son, and lastly, the testimony fails to establish a fear of imminent serious physical harm by the threat of force.
 {¶ 8} Appellee responds by suggesting that review of the entire record establishes any inconsistency in Mrs. Hunter's testimony is minor and matters of credibility are appropriately a determination for the trial court. We agree.
 {¶ 9} It has long been recognized that conflicting evidence and inconsistencies in testimony do not render a verdict against the manifest weight of the evidence. We must, as a reviewing court, accord due deference to the credibility determination of the fact-finder. This court has held many times that credibility is for the trier of fact. As noted by the Ohio Supreme Court in Myers v. Garson (1993),63 Ohio St.3d 610, 614 "where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court."
 {¶ 10} As we noted in Chapman v. Chapman, Montgomery App. No. 19677,2004-Ohio-2318, "a petition for domestic violence order shall be granted if a person places a family or household member in fear of imminent physical harm by threat of force." R.C. 3113.31(A)(1)(b).
 {¶ 11} There is no question in this case that the trial court found competent and credible evidence that Mrs. Hunter was indeed placed in fear of imminent physical harm by not only the threat of force, but an act of actual domestic violence as well. The court concluded that Mr. Hunter's behavior had caused Mrs. Hunter to fear that he would, in fact, cause her serious physical harm unless a civil protection order was granted.
 {¶ 12} We have read the record and these conclusions are supported by the facts adduced before the magistrate. First of all, the trial court found Mrs. Hunter to be credible. She testified that Mr. Hunter "knelt on my lower leg in a position — it felt like it was going to break and I screamed. And to stop it . . ." (Transcript of Proceedings of March 14, 2005 at page 6).
 {¶ 13} As correctly noted by the trial court, in its judgment, "the primary focus of R.C. 3113.31(A)(1)(b) is the perception of the victim" and as noted previously, the trial court found the victim, Mrs. Hunter, credible. We shall not disturb the trial court's judgment on this matter. The trial court was in the best position to gauge credibility of both the petitioner, Mrs. Hunter and the respondent, Mr. Hunter.
 {¶ 14} Next, Mr. Hunter argues that the court did not properly credit the testimony of a colleague in the prosecutor's office, citing to his colleague's status as an officer of the court. However, his associate was not an eyewitness, but merely one who substantiated Mr. Hunter's arrival time at the office in the morning in question. Any factual inconsistency regarding the exact time of the confrontation between the parties is a trivial fact and has no bearing upon the truth of Mrs. Hunter's assertions nor the reasonableness of her fear. Likewise, the trial court was free to reject the testimony of Mr. and Mrs. Hunter's son.
 {¶ 15} We lastly note the trial court adopted the magistrate's findings in their entirety which included a finding the petitioner was credible as to the events of September 24, 2004, and that Mr. Hunter had engaged in a history of aggressiveness towards Mrs. Hunter, causing her to be in great fear that he (Mr. Hunter) will harm her.
 {¶ 16} Appellant's first assignment of error is overruled.
 "SECOND ASSIGNMENT OF ERROR {¶ 17} "THE TRIAL COURT'S FINDINGS OF FACTS WERE CLEARLY ERRONEOUS WHEN IT MISCONSTRUED THE ACTUAL TESTIMONY OF MR. AND MRS. HUNTER."
 {¶ 18} Appellant argues the trial court incorrectly found Mrs. Hunter was going to see her divorce attorney, rather than her bankruptcy attorney on the morning of September 24, 2004, and that the trial court erred in holding Mr. Hunter admitted an argument occurred that same morning.
 {¶ 19} The record reveals Mr. Hunter's own testimony is that Mrs. Hunter told him, "I'm going to Dayton to see an attorney." (Transcript of Proceedings of January 7, 2005 at page 4-5). Thus, any finding of fact by the court as to the nature of the attorney's practice, divorce or bankruptcy or both, is actually completely irrelevant to the credibility determination and findings necessary to support the issuance of a CPO.
 {¶ 20} Secondly, a careful reading of Mr. Hunter's testimony reveals that he acknowledged that he and Mrs. Hunter had a disagreement on the morning of September 24, 2004. Clearly his characterization of their disagreement that morning as an amicable one was rejected by the trial court and more appropriately characterized as an argument that led to threatening and assaultive behavior.
Accordingly, we find no error in these factual findings warranting reversal.
Judgment affirmed.