OPINION
{¶ 1} Diana Bias appeals from a Civil Stalking Protection Order (CSPO) entered against her and in favor of Vicki Hughes, who is married to Bias' brother, Gary Hughes. Bias' single assignment of error asserts:
 {¶ 2} "THE TRIAL COURT ERRED IN GRANTING A CIVIL PROTECTION *Page 2 
ORDER TO THE PLAINTIFF-APPELLEE BY NOT GIVING SUFFICIENT WEIGHT TO THE TESTIMONY OF THE DEFENDANT-APPELLANT."
 I {¶ 3} After the entry of an ex parte CSPO, a CSPO full hearing occurred before a magistrate, resulting in the CSPO now on appeal. (The trial court overruled Bias' objections and approved and adopted the CSPO as its own.)
 {¶ 4} At the hearing, Vicki and Gary Hughes testified in support of the CSPO and Bias testified against its issuance. Vicki Hughes also testified concerning several written witness statements that the parties stipulated could be used as evidence. (These witnesses had been present for a previously scheduled full hearing for which Bias failed to appear, and the stipulation appears to have been made to spare these witnesses further inconvenience.)
 {¶ 5} The parties' differences appear to have arisen out of the Hughes being appointed guardians of Gary Hughes' and Bias' mother, Betty Hughes, who is in a nursing home with Alzheimer's disease. The Hughes were required to sell the mother's house for Medicaid purposes. Specific bones of contention appear to have been the sale of the house and Bias' desire to take her mother home with her to southeastern Ohio. Until recently, Bias had had little contact with her siblings for many years.
 II {¶ 6} Vicki Hughes testified that in mid January (of 2005), Bias confronted her while she was unloading groceries and "told me that if I didn't stay out of the family business, she would beat me to death, or something, beat me to death, beat the crap out of me, something like that." This testimony was corroboratted by the notarized statement of Janet Rue. *Page 3 
 {¶ 7} Vicki Hughes further testified that as she stood on her front porch, she saw Bias drive by slowly and hold up a "chrome pistol or chrome something" and say "I have one, too, or I have one for you." Gary Hughes corroborated this testimony and added that the incident occurred May 24 (of 2005).
 {¶ 8} Vicki Hughes also testified that Bias threatened the realtor marketing the mother's house that if she sold the house, that she (Bias) would see that she lost "her real estate license and her career." This testimony was corroborated by a notarized statement of the realtor. Vicki Hughes also testified that Bias caused a disturbance at the nursing home where the mother was a resident. This testimony was corroborated by a notarized statement of a nurse's assistant at the nursing home. Vicki Hughes referenced a notarized statement from Jimmy Teague who stated that on May 24, 2005, he observed Bias trying to enter the mother's house. She yelled at Teague: "If Gary sells this house, I've got a bullet for his ass and one for Vicki too." Vicki Hughes also referenced a notarized statement from her brother-in-law, Oren Hughes, who said that in August, 2004, his sister, Bias, exhibited a chrome or stainless steel pistol to him. He said she started making calls to him threatening to get even "if I didn't take her side against Gary and Vicki . . ." He opined that she was capable of violence and a "real threat to the safety of anyone she dislikes."
 {¶ 9} Both Vicki and Gary Hughes testified to numerous harassing and threatening calls from Bias. Vicki Hughes, when asked "Do you feel threatened by her (Bias') presence there?" answered "I feel very, I feel threatened right now." Vicki Hughes continued:
 {¶ 10} "The fact that she's coming by, she's phone calling. The only thing my husband and I are trying to do is carry out the orders of the Court, that we have been directed by the *Page 4 
Court of Greene County to do. That is all we're trying to do. We are not taking money. I have been audited, and I feel like that I am being harassed to the point that I cannot even do my job because I'm trying to do what the Court has asked me to do."
 {¶ 11} Diana Bias' testimony can best be characterized as a point by point denial of the accusations made by Vicki and Gary Hughes or contained in the written statements which were part of their evidence. She also presented five statements: two over the signature of a Dr. George Calandros and three directed to Dr. Panos Ignatiadis by radiologists which identified numerous ailments of which Bias was afflicted, including MS, scoliosis, arthritis, spondylosis, and mini strokes. One of Dr. Calandros' statements opined that "(Bias) continues to be unable to drive or pursue gainful employment until her disease can be brought under control or cure." Bias also said she had cancer and a brain tumor but her statements did not mention these ailments. Bias also claimed that Gary Hughes harassed her.
 III {¶ 12} The magistrate expressly found that "the testimony of (Bias) was not credible." The trial court specifically addressed an objection to this finding and stated that after "de novo review of the transcript" it agreed with that finding.
 {¶ 13} Where, as here, the evidence of opposing parties is in conflict, a reviewing court must defer to the trial court, whose province it is to determine which evidence to credit. See Hunter v.Hunter, Montgomery App. No. 21285, 2006-Ohio-6307.
 {¶ 14} Here, the evidence presented in support of the CSPO, if believed, established that Bias, by engaging in a pattern of conduct, knowingly caused Vicki Hughes to believe that she would cause Vicki Hughes physical harm or mental distress. See R.C. 2903.211(A)(1). *Page 5 
 {¶ 15} The magistrate and trial court expressly believed that evidence and disbelieved the testimony of Bias.
 {¶ 16} Having ourselves reviewed the evidence, we have no reason to second guess the magistrate and trial court.
 {¶ 17} The assignment of error is overruled.
 IV {¶ 18} The judgment will be affirmed. *Page 1