[Cite as *State v. Hockett*, 2019-Ohio-1257.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28141 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-2634/1 |
| | : | |
| JAVONN L.E. HOCKETT | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of April, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant Javonn L.E. Hockett appeals from his conviction for felonious assault. He contends that the conviction was not supported by the weight of the evidence.

**{¶ 2}** We conclude that there is evidence in this record upon which a reasonable juror could rely in finding Hockett guilty of the offense of felonious assault. Therefore, we cannot conclude that the jury clearly lost its way or created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. This is not the exceptional case in which the evidence weighs heavily against the conviction. Accordingly, the judgment of the trial court is affirmed.

## I.    Facts and Procedural History

**{¶ 3}** On December 17, 2015, Kevin Webb was shot multiple times while in the parking lot of a liquor store known as Gina's. Webb and his sister Kaneisha McDonald had driven to Gina's to purchase alcohol. Once inside the store, Webb and McDonald encountered Hockett and Ryan Scott. Hockett made a remark to McDonald. While it is not clear what the exact remark was, the record indicates that it was suggestive or an attempt to "come on" to McDonald. The remark caused Webb to respond by saying something to the effect of "that's not going to happen." At that point, Hockett became angry, and he and Webb began arguing. Scott was also involved in the argument. Eventually, Webb, McDonald, Hockett and Scott left the store. Hockett and Scott entered the same vehicle, a silver Pontiac, which drove away.

{¶ 4} A few moments later, the silver Pontiac returned to the parking lot at which time Webb was shot. Webb suffered gunshot wounds to the abdomen, right torso and right hand. Webb testified that he was first shot in the hand, and that he began to run back into the store while the shots continued. He then began to feel a burning sensation from the remaining shots to his body.

{¶ 5} Webb was transported to the hospital, where he underwent emergency surgery requiring two trauma surgeons. During surgery, Webb lost the equivalent of four times his entire blood volume, requiring massive transfusions. Additionally, parts of Webb's liver and pancreas, as well as one entire kidney, were removed due to irreparable damage. His stomach had holes in both the front and back which required repair. The surgeons were not able to close Webb's abdomen following the initial surgery. He remained in the hospital for almost 60 days. As a result of his injuries, Webb underwent numerous additional surgeries. He also developed diabetes as a result of the pancreatic surgery, and he later began suffering seizures due to the inability to control the surgically-induced diabetes.

{¶ 6} Following an investigation, the Dayton Police arrested Hockett and Scott. Both men were indicted on two counts of felonious assault, and each count had attendant firearm and repeat violent offender specifications. They were also both indicted on two counts of having a weapon while under disability with attendant firearm specifications.

{¶ 7} The felonious assault charges proceeded to a jury trial; the jury found Hockett guilty of both counts of felonious assault as well as the firearm specifications. Scott was convicted of both counts of felonious assault but not the firearm specifications. Thereafter, a bench trial was conducted on the charges of having weapons while under

disability and the repeat violent offender specifications. The trial court found both men guilty of those charges and specifications.

{¶ 8} A sentencing hearing was conducted in October 2017. At that time, the trial court noted that a written jury waiver had not been filed for either defendant relating to the counts of having weapons while under disability. Thus, the trial court dismissed those counts, along with the related firearm specifications. The trial court ordered the merger of Count 1 (felonious assault/deadly weapon) and Count 2 (felonious assault/serious physical harm), and the State elected to proceed to sentencing on Count 2. The court sentenced Hockett to an aggregate prison term of 20 years.[1]

{¶ 9} Hockett appeals.

## II. Manifest Weight

{¶ 10} Hockett's sole assignment of error states as follows:

THE CONVICTIONS IN COUNTS I AND II ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} Hockett contends that the testimony of Webb and McDonald was inconsistent and unreliable and that, therefore, the conviction for felonious assault was against the manifest weight of the evidence. He further contends that there was evidence to contradict the testimony of Webb and McDonald, and that the conviction must be reversed.

{¶ 12} A manifest weight of the evidence challenge questions whether the state has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678

---

[1] Scott was sentenced to an aggravated term of 16 years.

N.E.2d 541 (1997). When a defendant asserts that his conviction is against the manifest weight of the evidence, the court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.* quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Further, "[a] trier of fact is free to believe all, part or none of the testimony of each witness." *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 42 (2d Dist.), quoting *State v. Lewis*, 4th Dist. Scioto No. 01CA2787, 2002 WL 368625, * 3 (Feb. 25, 2002), citing *State v. Long*, 127 Ohio App.3d 328, 335, 713 N.E.2d 1 (4th Dist.1998). Therefore, while the reviewing court considers the credibility of witnesses in a challenge to the manifest weight of the evidence, it does so keeping in mind that the "trier of fact is in the best position to determine a witness's credibility through its observation of his or her demeanor, gestures, and voice inflections." *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17.

{¶ 14} Hockett's argument is based, in part, upon discrepancies in the trial testimony of McDonald and Webb. Specifically, he notes that McDonald testified she and Webb exited Gina's before Hockett and Scott, while conversely, Webb testified that Hockett and Scott exited first. Additionally, McDonald testified that, when the Pontiac

returned to Gina's parking lot, both Hockett and Scott exited the car armed with guns and started shooting at Webb. Webb, in contrast, testified that the shooting was done by one person who was "hanging out" of the Pontiac.

{¶ 15} While we agree that these inconsistencies exist, the jury heard all the testimony and was free to determine the impact of the inconsistencies. Further, "[i]t has long been recognized that conflicting evidence and inconsistencies in testimony do not render a verdict against the manifest weight of the evidence." *Hunter v. Hunter*, 2d Dist. Montgomery No. 21285, 2006-Ohio-6307, ¶ 9; *State v. Eisenman*, 10th Dist. Franklin No. 17AP-475, 2018-Ohio-934, ¶ 9, citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714, *3 (May 28, 1996).

{¶ 16} Both Webb and McDonald testified that they went to Gina's Liquor where they encountered Scott and Hockett. They both testified that Hockett made some sort of suggestive comment to McDonald and that Webb responded to the comment. Webb and McDonald also consistently testified that Webb and Hockett proceeded to exchange heated comments. They also testified that Hockett pulled a gun while in the store, and that Hockett threatened to shoot Webb. Finally, both Webb and McDonald testified that Hockett and Scott left the premises in the same vehicle, which reappeared a few moments later, at which point Webb was shot.

{¶ 17} After reviewing the record, we conclude that the discrepancy regarding who exited the store first was of minor consequence. Further, we cannot say that the testimony regarding the shooters is contradictory. Webb testified that the Pontiac returned to the parking lot at which time Webb observed it stop with a person hanging out of the window shooting at him; he was, however, unable to identify the shooter. Webb

testified that he was shot in the hand, at which point he began running back into Gina's. McDonald testified that she saw both Hockett and Scott exit the vehicle and shoot at Webb. Based upon this testimony, it is entirely possible the jury determined that McDonald and Webb observed the shooters at different points in time. In other words, Webb initially saw the car, with a shooter hanging out the window, return to the parking lot and stop. Then he was shot in the hand at which point he turned to run into the store and did not observe, as McDonald did, the two men exit the vehicle. Therefore, we find this argument lacks merit.

{¶ 18} Hockett next contends that the testimony of an eyewitness, Steven Lehmann, discredits the testimony of both Webb and McDonald. Lehmann was sitting on his front porch directly across the street from Gina's when the shooting occurred. He was interviewed by the police shortly after the shooting. During the trial, Lehmann testified that, while there was a shooting at Gina's, he could not remember any details, including the gender of the shooter. However, on cross-examination, he admitted that he "probably" informed the police that he observed a female shooter.

{¶ 19} We note that, during trial, the police officer who interviewed Lehmann testified that he observed approximately 20 beer cans surrounding Lehmann. The officer also testified that Lehmann smelled of alcohol and was slurring his speech. Also, Lehmann testified that he had observed "several people get shot and die" in that location. Again, the jury was free to believe some, all or none of Lehmann's testimony. Given that Lehmann appeared intoxicated on the night in question, the jury could have determined that his testimony lacked credibility. Indeed, the jury may have concluded that Lehmann was intoxicated and had confused the instant shooting with another shooting he had

observed at Gina's. In any event, we cannot say that this testimony should have been afforded more credit than that of Webb and McDonald regarding the identity of the shooter.

{¶ 20} Next, Hockett claims that the testimony provided by Montaga Bailey tended to discredit the testimony of Webb and McDonald. Bailey, who is Scott's mother, testified that she drove both Hockett and Scott to Gina's on the night of the shooting. She testified that she was driving her father's burgundy pickup truck. She further testified that she did not observe a shooting. However, the jury could have determined that Bailey's relationship to Scott rendered her testimony incredible. Further, the State presented evidence that Bailey owned a silver Pontiac. Given this evidence, and the fact that Bailey placed Scott and Hockett at the scene, we cannot say that the jury lost its way regarding Bailey's testimony.

{¶ 21} Finally, Hockett claims McDonald was not a credible witness because she admitted that, at the scene, she originally gave the police a false name. Testimony was adduced indicating that McDonald was aware of the existence of a warrant for her arrest on a misdemeanor offense and that she did not want to be arrested at the scene. Again, the jury was made aware of this information, and it was entitled to determine what weight, if any, to assign it.

{¶ 22} Based upon the record before us, we conclude that Hockett has failed to demonstrate that the jury clearly lost its way or created such a manifest miscarriage of justice that the conviction must be reversed. We further conclude that this is not the exceptional case in which the evidence weighs heavily against the conviction. Accordingly, the sole assignment of error is overruled.

### III.    Conclusion

**{¶ 23}** The assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Michael J. Scarpelli
Robert Alan Brenner
Hon. Michael W. Krumholtz